ROBERT D. MORRIS v. UNION DEPOT BRIDGE & TERMINAL RAILROAD COMPANY, Appellant.—8 S. W. (2d) 11.

Court en Banc, June 21, 1928.

*Paul C. Sprinkle, Kenneth McC. DeWeese* and *Cyrus Crane* for appellant.

*W. W. Holloway, John L. Gaylord* and *McAllister, Humphrey & Pew* for respondent.

GANTT, J.—On January 23, 1919, the plaintiff, Robert D. Morris, was a passenger on defendant's car, from which he claims to have been thrown and injured. The case was submitted on assignments of negligence as follows:

1. Negligently opening the door of the car, causing plaintiff to be thrown through the open doorway.

4. Negligent operation of the car, causing it to collide with a car ahead.

It is then alleged that plaintiff's injuries are the direct result of said negligence.

Trial was had, verdict for $20,000, and defendant appealed.

I. Defendant assigns error upon the refusal of its instructions in the nature of a demurrer.

The evidence for plaintiff tended to show the defendant operated a street car system between North Kansas City, Missouri, across the bridge spanning the Missouri River, to Kansas City, Missouri; that plaintiff boarded the car, paid the usual fare, and became a passenger thereon; that the seats and standing room were occupied, plaintiff being the last to board the car; that he stood with his back immediately adjacent to the door, which was at the front of the right side and was the only means of entrance and exit; that the car was under the control of one man, who stands at the front on the left side and is separated from the passengers by an iron railing; that the brakes and the door of the car were operated by an air lever, revolving on a dial, which controlled the closing and opening of the door and the setting and releasing of the brakes; that the car was moving behind an interurban car, and when the highest point on the bridge was reached the motorman threw off the power and coasted down the incline at fifteen miles per hour; that while so coasting he engaged in conversation with one or two girls, took down his pencil and trip sheet and was in the act of recording some figures when someone shouted "look out;" that the motorman looked

up, became excited, dropped the pencil and trip sheet, grabbed the lever and suddenly threw it entirely around, which caused the door to open very quickly and at the same instant the cars collided; that by the impact plaintiff was hurled backward through the open door-way, striking the small of his back and head against a large steel beam of the bridge; that the car was stopped by the collision, and plaintiff either got back on or was helped on, and after a brief interval, the car proceeded to the terminus; that plaintiff left the car and walked to 5th and Wyandotte, where he was assisted into a jitney bound for Kansas City, Kansas, where he resided; that as a result of his injuries he became afflicted with traumatic neurasthenia or nervous exhaustion, resulting in melancholia, headaches, sleeplessness, loss of weight, loss of memory and loss of sexual power.

The evidence for the defendant tended to show that while there was a rear end collision the door was not opened by the motorman or anyone else; that it remained closed during the time the car was on the bridge, and that plaintiff neither fell through nor was thrown through the open doorway, but remained on the car until it reached its terminus.

Clearly, under the evidence for plaintiff a submissible case was made under assignments 1 and 4. The contention is overruled.

II. Defendant assigns error upon the giving of plaintiff's Instruction 1. This calls for a consideration of the assignments of negligence in the petition, as follows:

"1. . . . And while defendant's car was moving at a much greater rate of speed than was the said interurban car, said defendant's car suddenly crashed into and collided with the rear end of said interurban car, at which time or immediately prior thereto, and without the knowledge of plaintiff, and without any warning to him whatever, the motorman on said defendant's car negligently opened said door, causing plaintiff, when said collision occurred, to be hurled out of said car through the doorway thereof, striking his head, shoulders, back and legs violently and with great force against a large steel or metal post, brace or girder of said bridge, then and there injuring plaintiff in a manner hereinafter set out.

"2. That defendant's said car was equipped with a mechanical device which operated to open said car door when the brakes on said car were set, and to close said car door when the brakes on said car were not set, with which mechanical device and its operation plaintiff was not familiar, and did not have any knowledge thereof at the time he was so injured. That defendant was negligent in maintaining such mechanical device on said car.

"3. That the motorman, whose name is unknown to plaintiff, in charge of said car, being then and there the agent, servant and em-

ployee of defendant, was grossly careless and negligent in the operation of said car, that is to say, that he drove it at a high, excessive and dangerous rate of speed, to-wit, about twenty-five miles per hour.

"4. That said motorman knew or by the exercise of ordinary care and prudence should have known that there was another car ahead, as aforesaid, and that unless he checked the speed of defendant's car at the proper time, it would crash into the rear end of said interurban car and in failing to use such care and prudence he did conduct and negligently run into and collided with said car ahead."

Plaintiff abandoned assignments 2 and 3, and the case was submitted on assignments 1 and 4 in plaintiff's Instruction 1, which is as follows:

"The court instructs the jury that if you find and believe from the evidence that the plaintiff herein was on or about January 23, 1919, at about 4:30 or five o'clock, the afternoon of said day, a passenger on one of the defendant's cars being conveyed by the defendant across the bridge which spans the Missouri River from North Kansas City to Kansas City, Missouri, and while a passenger thereon, the said car, while being operated by a servant and employee of said defendant, if you find it was so operated, was carelessly and negligently permitted or allowed to approach, overtake, strike and collide with another and larger car on the same track ahead, if you so find, and that at the time or immediately before striking and colliding with the said car ahead, the servant and employee of the defendant in charge of its said car carelessly and negligently opened or caused the door of the car upon which plaintiff was riding to be opened, if you so find, and as a result of such carelessness and negligence on the part of said servant and employee of the defendant, if you so find that he was careless and negligent, as aforesaid, the plaintiff was violently hurled or thrown through the doorway of said car and struck his head and back on or against a large steel or metal post, brace, or girder of said bridge, and if you further find as a direct result thereof, his back was wrenched, sprained, twisted or bruised, his nervous system was shocked and injured, if so, and that as a further result he received injuries to his spine, muscles and nerves of his back resulting in a condition of traumatic neurasthenia, if you so find, and if you find from such condition of traumatic neurasthenia, if any you so find, he is now and has been in a condition of melancholy, despondence and depression, that he tires easily, that he has frequent headaches, that he has suffered a loss of memory, and that he has lost his sexual power or any of such results, if you so find, then your verdict should be given for the plaintiff."

(a) Defendant contends "the instruction is at variance with the petition as to negligence."

The allegations in the petition as to negligence are not carefully drawn and are scattered and disconnected. Assignment 1 contains a general charge of negligence as to the collision, but this general charge is coupled with a specific charge that the motorman negligently opened the door. Assignment 4 charges the collision was caused by the negligence of the motorman in failing to check the speed of the car. These allegations should be taken together, and when so taken make the assignments of negligence charged to have caused the injuries. As stated, assignment 1 also contains a specific charge of negligence, in that the motorman negligently opened the door. Coupled with this is the statement that the door was opened without a warning to plaintiff and without his knowledge. The knowledge of plaintiff that the door was to be opened would not excuse the negligence of defendant, if any, in opening the door. If plaintiff had known the door was to be opened, he might have been charged with a duty to protect himself. It is not claimed defendant warned plaintiff the door was to be opened or that he knew it was to be opened. In fact, defendant denied the door was opened. Therefore, we hold the statement of want of knowledge and failure to warn were no part of the charge that the defendant negligently opened the door. The petition considered as a whole contains no general charge of negligence. Plaintiff's injuries are alleged to have been caused by the opening of the door and the failure to check the speed of the car.

The instruction required the jury to find that the motorman negligently permitted or allowed the car to approach, overtake, strike and collide with the other car. This is equivalent to requiring a finding that the motorman negligently failed to check the speed of the car. The instruction does not follow the exact language of the petition but the meaning is the same. In addition, the instruction required the jury to find that the motorman negligently opened the door; and if the jury found as a result of the negligence aforesaid plaintiff was injured, then the verdict should be for the plaintiff. Thus, it appears the negligence submitted by the instruction was the specific acts of negligence charged in the petition. Even if the instruction had been too general under the pleadings, it does not follow that the case should be reversed for this reason, for the proof covered only the specific matters complained of in the petition and "the jury had before it no other negligent act to consider." [Riley v. Independence, 258 Mo. l. c. 683, 167 S. W. 1022.]

(b) Defendant insists it is assumed in the instruction that it was negligence to use the particular device to operate the car. We do not so understand the instruction. Negligence is assigned in maintaining the device by which the door and brakes were controlled, but there was no proof of that allegation. Inquiries were made with reference to what the motorman did at the time the door was opened, but this was with reference to the operation of the device.

379

(c)  Defendant contends that the instruction by the expression "and that he has lost his sexual power" submitted the issue of permanent loss of sexual power when there was no evidence of such permanent loss. Defendant used the exact expression in its given Instruction E, submitting the question of loss of sexual power; therefore, it is in no position to complain of the error, if any. We cannot convict the trial court of error under the circumstances.

(d)  Defendant contends that the expression "of any such results" in the instruction is not limited to the causes set out in the instruction. We do not so construe the instruction. The expression refers and is confined to the results just before mentioned which depend upon the hypothesized condition of the traumatic neurasthenia caused by the injury.

The contentions are overruled.

III.  Defendant assigns error upon the refusal of its Instruction H, as follows:

"The court instructs the jury that the evidence in this case is not sufficient to permit the jury to find that the plaintiff has lost his sexual power, and you cannot allow him any damages on account of his claim of loss of sexual power."

Plaintiff testified he was twenty-seven years old, married and the father of a child two years old; that since the collision he was unable to perform the sexual act. The physicians testified that he was afflicted with traumatic neurasthenia, and further testified that such a condition could cause the loss of sexual power. The contention is overruled.

IV.  Defendant assigns error upon the refusal of the court to permit Mrs. Penticuff and Mrs. Hardy to testify that the wife of plaintiff was pregnant and thereafter suffered a miscarriage.

The wife testified that after the collision she became pregnant by plaintiff and suffered a miscarriage. These witnesses visited the wife during the time of the alleged pregnancy and after the alleged miscarriage. They were permitted to describe her appearance and condition and then give their opinion that she was pregnant. Mrs. Hardy was not asked to give an opinion on the question of miscarriage. Therefore, all that is left of this assignment is the refusal of the court to permit Mrs. Penticuff to testify on the question of miscarriage. She was not present when it is claimed the wife suffered a miscarriage, but visited her thereafter. She was permitted to testify at length as to the physical appearance and condition of the wife and as to what she did toward giving her relief. A nonexpert witness may testify to all such matters. [Elliott v. Ry., 157

Mo. App. l. c. 522, 138 S. W. 663.] The witness was the mother of four children and had suffered a miscarriage and had attended a sister who had suffered a miscarriage. It is the contention of defendant that these experiences qualified the witness to give an opinion on the subject. The question is not within the range of the ordinary witness. It is not so claimed by the defendant. By undertaking to qualify the witness, the defendant admits the necessity of qualification. To hold the witness was qualified to diagnose the case would, in effect, be holding that special skill was not required of a witness before qualified to give an opinion on questions involving technical knowledge. The so-called qualification of the witness discloses that she could only testify, "I suffered a miscarriage and the wife's symptoms were like mine." [Gray v. Brooklyn Ry. Co., 175 N. Y. 449.] The contention is overruled.

V. Defendant assigns error upon the admission of the testimony of Dr. Faust, a witness for plaintiff, concerning the condition of plaintiff's prostate gland. After the examination on the question had proceeded for some time, the defendant objected for the reason the inquiries were "wholly outside the allegations of the petition." Objection was overruled for the reason that it was not timely. The court ruled correctly, and the contention is overruled.

VI. Defendant assigns error upon the admission of the testimony of plaintiff, that after the collision there was a discharge from his penis. The contention rests on the following testimony of plaintiff:

"Q. Now, during this time, did this discharge continue?

"MR. CRANE: Just a moment. I want to preserve an objection to that. It is outside of any allegation in the petition.

"MR. PEW: It is the proof of the loss of manhood, and necessarily the hypothetical question would be to that effect. We are not suing for anything he lost in that respect, you understand, but that is the evidence of the injury.

"MR. CRANE: Well, I object to it, because it is simply a plain proposition, that it is not a thing necessarily that would inevitably flow from anything sustained there, in the way of physical injury.

"THE COURT: Do you expect to supply testimony to show the connection of this symptom with the allegation?

"MR. PEW: Yes, sir, that is the foundation of the doctor's testimony. We have several of them who will testify as to the man's condition.

"THE COURT: You may proceed on that condition."

To which action and ruling of the court, the defendant, by its counsel, then and there at the time duly excepted and still excepts.

"MR. PEW: Q. State whether or not this condition of soiled clothes continued? A. It continued for some (time), and I haven't noticed it right recently.

"Q. But during the time you were going to Doctor Perkins, that six weeks? A. During that time I was going to Dr. Perkins, my clothes was soiled practically all the time."

Testimony of the discharge of semen was previously in the record without objection, as follows:.

"Q. And state whether or not you noticed any discharge from your penis, after this accident? A. I did. My clothes was soiled and I mentioned it to the doctor. I mentioned to the doctor about it.

"MR. CRANE: Never mind, about that—if Your Honor please—

"MR. PEW (interrupting): Why, no, a man has a right to tell a doctor his symptoms.

"THE COURT: Sustained. That part of his answer pertaining to his conversation with the doctor is sustained.

"MR. PEW: Q. When did you first notice this, Mr. Morris, about this soiled clothing? A. Well (witness hesitates) it was when I first commenced going over there, getting over town, or—yes, when I first commenced to going over there, then I noticed my—well, I noticed the soil there, and when I went to the doctor I asked him about it."

It will be noted that counsel for plaintiff promised to later introduce testimony tending to show that the discharge could follow the injury resulting from the collision. It is admitted that counsel failed to do so. Previous to the objection made by defendant to this testimony, plaintiff had testified with reference to a discharge from his penis. Defendant's counsel now contends he undertook to object to these previous questions, but was interrupted by the court and counsel for plaintiff. The record does not sustain this contention. It is clear counsel for defendant was attempting to object to plaintiff's stating what he had told his doctor. Before counsel completed the objection the court understood and sustained the objection. Thereafter the inquiry proceeded without objection. Finally defendant did object. In defendant's brief in Division his counsel did not claim that he attempted to make an objection to the testimony, but claimed that he objected "when plaintiff sought to show that he had a continuing discharge from his penis." Whatever may have been the intention of counsel for defendant, the fact remains that the plaintiff testified, without objection, that after the collision he suffered a discharge from his penis. This testimony being properly before the jury, we do not see how a continuation of the examination could have been prejudicial to the defendant. The fact that counsel

for plaintiff neglected to connect the discharge with the injury could in no way alter this conclusion. The contention is overruled.

In this connection defendant directs our attention to the evidence with reference to the loss of sexual power. The evidence tended to show that neurasthenia could cause loss of sexual power, and the condition of plaintiff's prostate gland was such that it could also cause such loss. Defendant contends there is no evidence from which the jury could infer that the condition of the gland was the result of the collision. In this situation it is argued that "inasmuch as one cause would make liability and the other not, it was erroneous to submit the question." In other words that "the state of the evidence is such as to leave the question to be determined only by conjecture or surmise." If the subnormal condition of the gland existed before the collision, it could not be said to have contributed to the loss of sexual power, for before the collision the plaintiff could perform the sexual act. The evidence tended to show that before the collision plaintiff was a vigorous, healthy man. The jury could so find and could further find that before the collision his gland was normal. After the collision if the gland was found to be subnormal, the jury could infer that the injuries received in the collision caused the subnormal condition of the gland. Therefore both causes "would make liability," and the question was not left to conjecture. The evidence tended to show the condition of the gland could be attributed to diseases but there was no evidence that plaintiff was or had been afflicted with any such diseases.

VII. Defendant assigns error in permitting Dr. Faust to answer the hypothetical question with reference to plaintiff's injuries. It is claimed the doctor based his opinion upon a history of the case as related to him. The question is based on his experience as a physician and his examination of the plaintiff. No reference is made to a history of the case, and the contention is overruled.

VIII. Defendant assigns error upon the argument of counsel for plaintiff. This assignment is not for review for no exceptions were taken to the argument.

IX. The verdict is claimed to be excessive. At the time of the collision plaintiff was twenty-seven years old, with an expectancy of thirty-eight years, and earning $130 per month. He was in good health and vigor. The evidence tended to show that as a result of the collision he was afflicted with a severe case of traumatic neurasthenia and a loss of sexual power. He lost several weeks' time, and thereafter performed different kinds of work at an

average reduction of one-third in wages. At the time of the trial, four years after the injury, a physician, called by plaintiff, testified he noticed only a slight improvement in his condition, but also testified this litigation would tend to retard his recovery. None of the physicians testified his nervous condition was permanent. The evidence, if any, as to permanent loss of sexual power was meager. The trial court held there was no such evidence. There was no injury to the genital organs, and the plaintiff did not take the stand in rebuttal of the testimony of his former wife. Under the circumstances the jury could well find that plaintiff suffered a temporary loss of sexual power and a severe injury to his nervous system. The alleged loss of sexual power was the issue most bitterly contested. Naturally, this would attract the attention of the jury. From the whole record we are convinced the jury treated the loss of sexual power as permanent. All things considered, we think $12,500 is adequate compensation for the injuries suffered. If plaintiff will, within ten days, enter a remittitur in the sum of $7500, the judgment will be affirmed for $12,500 as of the date of the judgment of the circuit court; otherwise the judgment will be reversed and the cause remanded. All concur.