ELIZA STOLL v. FIRST NATIONAL BANK OF INDEPENDENCE, Appellant.—
134 S. W. (2d) 97.

Division One, December 13, 1939.

*Ryland, Stinson, Mag & Thomson* and *Wright Conrad* for appellant.

*Elmer Ahmann, Cowgill & Popham* and *Guy Green* for respondent.

584

DALTON, C.—This is an action for damages for personal injuries sustained by plaintiff as a result of a fall on defendant's premises. Plaintiff recovered judgment for $12,500 and defendant has appealed. Appellant has assigned various errors. However, because of the view we take of this case, it is necessary to consider only one, to-wit, the refusal of the trial court to give appellant's peremptory instruction, in the nature of a demurrer to the evidence, as offered at the close of the whole case.

Appellant was engaged in the general banking business at Independence, Missouri. It owned, maintained and operated the building in which it carried on its banking business. The building was constructed about 1930. The main entrance to the lobby of the bank was through a vestibule and up three steps, the top step being on the level of the lobby floor. The vestibule floor was of smooth dark marble, with large squares of white marble. The first two steps were of white Tennessee marble. The edge of the third or top step, was of dark marble (York Fossil), but eight inches back from the edge of the step there were squares of white marble in the lobby floor. Respondent had been a customer of the bank both before and after it moved into its new building. On June 3, 1936, about 12:30 P. M. after a visit to the bank, she came out through the main lobby and approached the stairs. At a point on the lobby floor near the edge of the top step her feet slipped from under her, and she fell down the steps to the vestibule floor and was severely injured.

Appellant contends that under the pleadings and evidence respondent was a customer in appellant's bank and, as such, an invitee of the bank; that it owed her only the duty a proprietor of a business owes to those coming on his premises by invitation; and that there is no liability for injuries from dangers that are obvious, or as well known to the person injured as to the owner or occupant.

Respondent contends that she was "a tenant of a safety deposit box for which she paid a consideration;" that she "is in the same

position as a tenant living on rented premises reached by a common passageway maintained by the landlord;'' that she fell in a common passageway provided for use of ''safety deposit box tenants;'' that appellant was required to exercise ordinary care to keep the common passageway in a reasonably safe condition for use; and ''that, even though the condition causing respondent's fall was an obvious one, and even though her knowledge of such condition was equal to that of defendant (appellant), she is entitled to recover in the absence of contributory negligence.''

We must review this cause upon the theory upon which it was tried below. It cannot be considered an appeal upon any other theory. ''It is elementary that a cause must be heard in the appellate court upon the same theory as that upon which it was tried.'' [Snyder v. American Car & Foundry Co., 322 Mo. 147, 14 S. W. (2d) 603, 606; Raming v. Metropolitan Street Railway Co., 157 Mo. 477, 57 S. W. 268; Benz v. Powell, 338 Mo. 1032, 1037, 93 S. W. (2d) 877, 879.] The petition alleged that respondent entered the building during business hours and ''incident to the use of a safety deposit box under lease from defendant in its premises,'' and for the purpose of transacting business with defendant; and that on attempting to leave the building she slipped on the top step of a stairway used by the customers and the general public as a means of ingress and egress to the bank. Respondent testified that on the date of her injuries she went to the bank by invitation, as she would call it, as one of its customers, and that she was one of ''its customers.'' She further testified that she had a safety deposit box which she had rented about a year before and that the particular trip to the bank was made to get an insurance policy out of the safety deposit box. Respondent's instructions, however, only required the jury to find that ''on and prior to June 3, 1936, plaintiff was a customer of defendant in its said bank,'' and was ''using the premises and attempting to use said steps.'' The existence of a safety deposit box, respondent's rental or use of it, or the use of a common passageway for ''safety deposit box tenants'' is not mentioned or referred to in any instruction. No request was made for the jury to make any finding as to such facts. The sole and only relationship of the parties which was submitted to the jury, and from which the basis of appellant's liability, if any, to respondent was to be determined, was that ''plaintiff was a customer of defendant in its said bank . . . using the premises.'' This relationship is referred to as that of owner or occupier to invitee. It is unnecessary, therefore, for us to determine whether or not the liability would have been different if the relationship of landlord and tenant applied to this case. The cause was not tried or submitted to the jury on that theory.

The petition states that the marble steps were ''excessively, unusually, extraordinarily and highly slick and slippery and danger-

ous for the ordinary use of guests and customers'' of defendant and the public; that persons using the steps were extremely likely to slip thereon; that defendant negligently failed to roughen the steps, provide a handrail, or cover the steps to prevent same from being slick; that defendant knew or by the use of due care would have known of the condition of said steps and long enough prior to plaintiff's injuries, "by the exercise of due care on its part to have remedied said dangers and made said steps and the use thereof reasonably safe, *or warned plaintiff* and those using said steps *of such dangers, said dangers being to her unknown*, all of which defendant negligently failed to do.'' (Italics ours.)

Respondent's testimony tended to show that she had been in the new bank building at various times and was familiar with the condition of the floor, steps and general surroundings. On direct examination she testified that after she secured the policy from the box she went out along the lobby floor and towards the top step. She said: "I was walking carefully, the floor was glossy, somewhat like a waxed floor in a home, and when I got near the edge of this top step I began to stiffen my knees . . . I felt like that I might slip, you know, that glossy, smooth surface there just made me be cautious . . . then my feet slipped from under me . . . I fell down right at the foot of the steps. . . . As I say, this floor was very glossy and smooth, just like a waxed floor in our homes, and that is why I was cautious . . . I didn't think that I would have had an accident like this, of course, but I just had to be careful in my walking, I realized that to keep from falling, I believe I need not repeat what I said before . . . I was always afraid of these waxed, glossy, smooth floors. I always was. . . . All the way from the time I left the deposit box, . . . I was careful from that time on . . . , because I was afraid it was smooth and waxed. It looked like. . . . I knew it was slippery and smooth, glossy-like, waxed all the time . . . yes, I knew that edge was . . . I knew it was slick enough to be careful, and that is why I stiffened my knees when I came to a place like that, walk carefully.'' "Q. . . . tell the jury whether or not you thought you could safely use it if you were cautious and careful? A. Yes.'' On cross-examination respondent stated that she had been in appellant's new building and had seen the floor frequently; that she had observed that the floor looked glossy; that she knew such condition existed when she went into the bank; that it had always been the same way; that she always felt there ought to be handrails but there were none; that she had no trouble seeing the floor and the condition of the floor on the date in question; that she knew she was on the top step immediately before she fell; that to the best of her recollection the toe of her shoe was close to the edge of the first step leading down . . . "close to the place where I would step down;'' that she did not stumble, but

slipped; that there was not any foreign substance on the floor at the place of the accident; that it was slick and glossy, and in the same condition she observed when she went in; and that her sight was good and her glasses good.

Respondent's husband, a witness for her, testified that on the day after the accident he examined the floor and the top step carefully; that it was in the same condition as ''it was the day his wife fell, . . . shiny and glossy. . . . It was very slick.'' He did not find any substance on it, but it was glossy and shiny ''just like ice.'' It was clean shiny marble and there was no mud, water, dirt or anything else on it. He admitted that he also examined the floor on the date of the accident after his wife was placed in the ambulance.

Respondent offered two witnesses who testified that they had slipped on the marble floor at the top step and one of the witnesses said he had seen two other persons slip on the floor. There was no evidence that this information had been given to the appellant or its officers. Respondent's other evidence tended to show that the steps and floor were made of marble, ''hone finished'' and very slick; that there was no wax or preparation of any kind on the marble floor and steps but the marble had been semi-polished before being installed; that it was the general custom and practice to have handrails at steps and to use safety treads of metal or rubber on steps to keep people from slipping; and that it was customary to have a sand or grainy finish (a non-skid finish), rather than ''hone finish'' on steps. ''Hone-finish'' was described as the smoothest finish—secured by rubbing the marble with a piece of hone (smooth stone) similar to a razor hone. Such a finish was said to leave the marble with a very slick smooth surface and a glossy appearance.

Appellant's evidence tended to show that the steps and floor were of ''hone-finished'' marble and that it was customary to have such finish in public buildings, offices and banks; that it was not slippery or slick but was smooth; that use tended to roughen up the finish; that there was no polish either on the floor or steps; that the steps conformed in every respect to custom and practice; that there was no custom to use handrails, or safety treads; that it was the universal custom not to use safety-treads; and that more than 5000 deposits were made in the bank by customers during the month preceding respondent's injury, and that all customers for every purpose had to come in and leave over these particular steps. The cashier of appellant bank further testified that from May 22, 1930 to June 3, 1936, he had received no complaint about the floor and that no accidents had been reported to him.

Appellant does not contend that respondent was guilty of contributory negligence as a matter of law, but does insist that there is no evidence of negligence on its part. It contends that in view of respondent's own testimony, she had full information as to the con-

dition of the premises prior to her fall; that no warning of any kind would have given her any more knowledge of the condition of the floor and steps; that even conceding the bank floor was slick and dangerous (which it does not) that there could be no recovery, for the reason that she was fully aware of all dangers and appellant breached no duty and was guilty of no negligence.

"The owner of lands is liable in damages to those coming thereon, using due care, at his invitation or inducement, expressed or implied, on any business to be transacted with or permitted by him, for an injury occasioned by the unsafe condition of the premises, which is known to him and not to them, and which he has suffered negligently to exist, and of which they have received no notice." [Vogt v. Wurmb, 318 Mo. 471, 475, 300 S. W. 278, 279.] The above opinion quotes from 20 Ruling Case Law 56, section 52 as follows: "The mere ownership of land or buildings does not render one liable for injuries sustained by persons who have entered thereon or therein; the owner is not an insurer of such persons, even when he has invited them to enter. Nor is there any presumption of negligence on the part of an owner or occupier merely upon a showing that an injury has been sustained by one while rightfully upon the premises. The true ground of liability is the proprietor's superior knowledge of the perilous instrumentality and the danger therefrom to persons going upon the property. It is when the perilous instrumentality is known to the owner or occupant and not known to the person injured that a recovery is permitted. . . . And, hence, there is no liability for injuries from dangers that are obvious, or as well known to the person injured as to the owner or occupant." The rule announced above is abundantly supported by the authorities and is well settled in this State.

In the case of Paubel v. Hitz, 339 Mo. 274, 96 S. W. (2d) 369, 373, the plaintiff a postman was delivering mail to the defendant. He slipped and fell on an inclining runway which was the means of ingress and egress to defendant's premises. Defendant was in the poultry business and the runway was constantly covered with manure and chicken dirt. Plaintiff was aware of the condition of the runway and observed the condition when he entered defendant's premises. On leaving the premises, and while upon the runway and exercising care for his own safety, he fell and was injured. This court said: "According to plaintiff's testimony, the maintenance and use of the runway at defendant's place of business was common to the commission houses in that vicinity. No hidden, lurking, or secret peril is involved. Whatever danger existed was not only obvious but actually known and appreciated by plaintiff. He possessed all the information concerning the physical condition of the runway possessed by defendant or his employees, and knew of and appreciated the care required to use the runway. He had been warned of the slippery

condition of the runway, no greater information would have been imparted to him than that which he admittedly possessed. A warning imparting notice of the condition of the runway would have discharged defendant's legal obligation. Therefore, whatever risk existed incident to passage over the runway was voluntarily incurred by plaintiff—*volenti non fit injuria*—and defendant breached no legal obligation owed plaintiff.''

In the case of Ilgenfritz v. Missouri Power & Light Co., 340 Mo. 648, 656, 657, 101 S. W. (2d) 723, 727, 728, the plaintiff fell on a highly waxed and polished floor of the defendant's sales and office room. The plaintiff had observed that the floor was slick and therefore walked very carefully. She did fall, however, and was injured. In that case after reviewing various authorities this court said: ''This is not a case where plaintiff had reason to expect a condition of one kind and without warning was met by another. There is no substantial evidence that the part of the floor where she fell was any slicker than any other part. . . . Everyone knows that a waxed floor must be walked over somewhat differently from a rough floor, and she was required to exercise the reasonable care that anyone could see was required by the circumstances for her own safety. However, whether she was careful or not, or whether her conduct was contributory negligence or not, makes no real difference, because there is no evidence to show that the defendant was guilty of any negligence, and, even if plaintiff was careful, defendant is only liable if it was negligent. It was not negligent unless there was something on the floor that in the exercise of due care should not have been there. This evidence does not show that there was. To hold defendant liable here would make it liable as an insurer and not because of negligence.''

It is unnecessary to review other authorities to the same effect. [Mullen v. Sensenbrenner (Mo.), 260 S. W. 982; Main v. Lehman, 294 Mo. 579, 243 S. W. 91; Cash v. Sonken-Galamba Co., 322 Mo. 349, 355, 17 S. W. (2d) 927, 930.]

Respondent does not undertake to reply to these authorities cited by appellant and in effect, both in oral argument and brief, concedes that if the relationship of the parties was nothing more than that of an ordinary business proprietor and customer that respondent is not entitled to recover. Respondent, however, contends that the cases cited by appellant where the ''plaintiff knew as much about the dangerous condition as defendant and, therefore, defendant was not negligent, all concern the relationship of a pure invitee to a storekeeper or other business house and are not in point.'' The trouble with respondent's position here is that this cause was brought and submitted to the jury on the theory that respondent was entitled to recover against appellant for a breach of a duty owed by the bank to a customer on its premises. The petition as we have seen expressly sets out the duty a business house owes to an invitee or customer,

to-wit, to exercise ordinary care to remedy a dangerous condition of the premises of which the proprietor knows or by the exercise of ordinary care could have known, *or to warn the customer of dangers unknown to such customer* but known to such proprietor. Respondent recognized the rule which required appellant to exercise ordinary care to remedy the unsafe condition of the premises (known or which by the exercise of ordinary care should have been known) *or to have warned her of such dangers,* and further expressly alleged "said dangers being to her unknown." In accordance with the petition, the relationship of the parties, as submitted to the jury, by respondent's instructions was solely and strictly that of a proprietor to a customer using the premises by invitation. It is unnecessary for us to determine whether or not liability would exist under a different theory. If under the facts in this case the respondent was not entitled to recover against the appellant on the theory on which this cause was tried below then the judgment must be reversed.

Respondent insists that her knowledge of the condition of the floor and its dangerous condition can only bear upon the question of contributory negligence and not on the question of negligence since respondent paid a consideration for the use of the premises and was in effect a tenant of appellant. It is unnecessary to say whether she was a tenant or not, since the cause was not submitted upon such a theory. We must determine whether or not there was any substantial evidence of negligence on the theory upon which respondent tried her case. It is true that respondent's instructions make no reference to any duty of appellant to warn her of dangers, known to it, but unknown to her, but the jury was required only to find that she was a customer of the bank and on its premises, and nothing more from which a duty on its part to exercise care for her safety would arise.

Respondent's insistence in this court that appellant's duty to her was not the duty owed to an ordinary business invitee, but was the duty owed to one who pays a consideration for the use of the premises, has perhaps been influenced by the recent decision of the Kansas City Court of Appeals in the case of Simon Stoll v. First National Bank of Independence reported in 132 S. W. (2d) 676, but handed down prior to the time this cause was presented on appeal. In that case a judgment in favor of respondent's husband for loss of services and medical expense by reason of respondent's injuries was reversed on account of the fact that the record disclosed that Mrs. Stoll "was as fully advised of the condition of the floor and steps . . . on that very day as she would have been had defendant called it to her attention and cautioned her to walk carefully." The evidence fully reviewed in that case is very similar to the evidence here. Respondent cites the case of Burnison v. Souders, 225 Mo. App. 1159, 1163, 35 S. W. (2d) 619, 622, dealing with the duty an innkeeper owes his

guest, and holding that the law protects the guest from the carelessness of the landlord, even where the defect in the premises is known or obvious to the guest, so long as the guest uses ordinary care. The rule is not applicable here. Reference is made to the case of Brewer v. Silverstein (Mo.), 64 S. W. (2d) 289, a suit by a tenant against a landlord for injuries due to unsafe condition of premises (steps not demised) provided for common use of all tenants. In discussing the alleged contributory negligence of plaintiff as a matter of law, this court held that knowledge of the condition existing in a common passageway does not make the tenant guilty of contributory negligence as a matter of law so as to defeat recovery unless the condition of the passageway was so glaringly and obviously dangerous that no reasonable person would have used it. The rule is not applicable here. Other cases cited by respondent are: Smiley v. Bergmore Realty Co., 229 Mo. App. 141, 73 S. W. (2d) 836; Kroeker v. Stecken (Mo. App.), 31 S. W. (2d) 229; Morelock v. DeGraw (Mo. App.), 112 S. W. (2d) 126; People ex rel. Glynn v. Mercantile Safe Deposit Co., 143 N. Y. Supp. 849, 159 A. D. 98; Carples v. Cumberland Coal & Iron Co., 240 N. Y. 187, 148 N. E. 185. None of said cases are applicable.

Without again reviewing the testimony in this case, we think it is apparent from respondent's own testimony that there were no conditions or circumstances in connection with appellant bank's floor and steps that were not fully known and appreciated by respondent. Appellant's officers and agents had no superior knowledge. Respondent admitted that she knew that the floor and steps were smooth, glossy, slick and slippery. She knew and realized the danger. She stiffened her knees as she approached the place where she fell, because she knew that she might slip and fall. The floor and steps were in the same condition, as they had been in before. She saw and observed that condition of the floor and steps and had observed that condition previously. There was no foreign substance on the floor and she met no unexpected condition. The evidence fails to show any negligence of appellant or the breach of any legal duty owed by appellant to respondent.

The trial court erred, therefore, in failing to give appellant's peremptory instruction in the nature of a demurrer to the evidence.

In ruling this case upon the same theory upon which it was submitted to the jury below, we do not mean to leave the impression that our holding would have been different had the cause been submitted upon the theory that the respondent was the lessee of one of appellant's safety deposit boxes.

The judgment should be reversed. It is so ordered. *Hyde* and *Bradley, CC.*, concur.

PER CURIAM:—The foregoing opinion by Dalton, C., is adopted as the opinion of the court. All the judges concur.