DOROTHY DEVINE v. KROGER GROCERY & BAKING COMPANY, Appellant.
—162 S. W. (2d) 813.

Division Two, May 5, 1942.

Rehearing Denied, June 17, 1942.

622

*Wayne Ely* for appellant.

624

*Everett Hullverson* for respondent; *Orville Richardson* of counsel.

626

628

BARRETT, C.—In this reassigned cause the Kroger Grocery & Baking Company appeal from a $10,000.00 personal injury judgment in favor of Dorothy Devine.

The suit was originally against Kroger Grocery & Baking Company, Henry Boemler, the manager of the store at Eureka, Missouri, and John Fromm, the owner of the building. The trial court sustained a demurrer to the respondent's petition as to Fromm and the case was then dismissed as to him. The jury returned a verdict in favor of Boemler and against the appellant. The appellant now contends that plaintiff's petition stated a cause of action based on the principle of respondeat superior and therefore the jury's verdict exonerating Boemler, who was in complete control and management of the store, and fixing liability on the appellant is inconsistent, a nullity and cannot stand, the agent or servant being found not guilty of negligence the jury could not find Kroger Grocery & Baking Company negligent.

The petition alleges that "Kroger Grocery & Baking Company . . . was at all times herein mentioned engaged in the general retail grocery business throughout the United States and particularly in the City of Eureka, Missouri, where *it maintained a retail grocery store and invited the general public* to make purchases and do business therein; that . . . Henry Boemler was the agent and servant and general manager, and as such was in charge of the said grocery store . . . and as such was charged with the general supervision and care of the said store and with the safety of persons lawfully doing business therein . . ." The respondent's petition then alleges that on September 2, 1937, she was "a customer and invitee of defendant corporation and Boemler in said store" . . . and *"was permanently injured as a direct result of the concurring*

*negligence and carelessness of all the defendants.*" Then follow five separate paragraphs specifically setting forth the particular conduct complained of. Four of them charge: "That *defendants* negligently and carelessly failed and omitted to exercise ordinary care to inspect the said exit and the board and hole" . . . and "failed and omitted to warn plaintiff of the existence of said hole in said doorway" . . . and "omitted to fill up or block said hole." The second specific charge is "that *defendant corporation and defendant Boemler* negligently and carelessly failed and omitted to exercise ordinary care to furnish persons, ▮▮▮ particularly plaintiff, with a reasonably safe place in which to do business and a reasonably safe exit from said store, in that *defendants* negligently caused, suffered and permitted the board aforesaid to be placed across the passageway of said exit, and did negligently and carelessly permit a hole to exist in the floor of said store . . ." She then says: "all of the injuries and conditions hereinafter mentioned occurred as a direct result of the *concurring negligence of all defendants in constructing, maintaining and permitting the said condition to exist* . . ."

The respondent submitted and the court gave two instructions, one on the measure of damages and the other on liability. The one hypothesizing respondent's theory of liability says: ". . . that *defendant Kroger Company* at the time of the occurrence in question . . . *was engaged in the grocery business* in Eureka, Missouri, *at the store mentioned in evidence,* and that defendant Boemler was the manager of said store and in charge thereof, and that at the exit of said store . . . was a hole, . . . and the presence thereof made the said floor dangerous and not reasonably safe for persons using the same, and that *defendants knew* . . . of said hole . . . and that plaintiff was a customer of the *defendant* . . . and that *defendants* were guilty of negligence in permitting said condition to exist . . . and in failing . . . to fill up or block same . . . and in failing to warn plaintiff . . . and that if plaintiff was injured as a direct result of such negligence" . . . she was entitled to recover.

The court gave the jury three forms of verdict. One permitted the jury to find "against both defendants," one permitted the jury to find "in favor of both defendants" and the one the jury used permitted a verdict "against the defendant Kroger Grocery & Baking Company" and "in favor of the defendant Henry Boemler."

The hole complained of appears to have been inherent in the construction of the floor and doorsill. It was three and one-half inches long and five-eighths of an inch wide and had been there for at least five years. Other substantive facts, in so far as they bear on this question, are about as alleged in the petition and as stated in the respondent's principal instruction. However, there is no direct evidence as to the nature and extent of Boemler's authority and duties except

his statement that he was manager and "in charge of" the store. Claude Woodworth, a clerk, did say it was a part of his duty to look after the safety of the floor and to prevent customers from getting hurt.

The given instruction on the burden of proof, offered by the appellant, covered, in general terms, both defendants. Its instruction on the duty of storekeepers concluded by saying: "Then you cannot find that the defendants, *or either of them,* were negligent in maintaining said floor and doorsill."

There is no objection to the form or manner in which the question of the defendants' liability was submitted to the jury. The appellant's theory here is that it could only be held because it was the employer of Boemler and as such liable for his negligence as manager of the store, therefore the jury's verdict exonerating him absolved and exculpated it of the charge of negligence requiring a reversal of this judgment.

██ Although there is some diversity of opinion as to whether damages may be recovered against an employer whose liability is wholly dependent on his servant's having been negligent—or the doctrine of respondeat superior—after the servant has been discharged of personal liability there is and can be no question but that we have adopted and followed the rule of non-liability in such cases. "Thus, according to the weight of authority, where employer and employee are joined as parties defendant in an action for injuries *inflicted by the employee,* a verdict which exonerates the employee from liability for injuries caused solely by the alleged negligence or misfeasance of the employee requires also the exoneration of the employer, and although the verdict purports to hold the employer liable, it cannot form the basis of a judgment against the employer, but must be set aside." [35 Am. Jur., Sec. 534, p. 962; 78 A. L. R. 365; 54 L. R. A. 649, 30 L. R. A. (N. S.) 404; Stoutimore v. Atchison, T. & S. F. Ry. Co., 338 Mo. 463, 92 S. W. (2d) 658; McGinnis v. Chicago, R. I. & P. Ry. Co., 200 Mo. 347, 98 S. W. 590; Lambert v. Jones, 339 Mo. 677, 98 S. W. (2d) 752; Reuhling v. Pickwick-Greyhound Lines, ██ 337 Mo. 196, 85 S. W. (2d) 602; Stith v. Newberry Co., 336 Mo. 467, 79 S. W. (2d) 447.] This is certainly the view when liability rests solely on the doctrine of respondeat superior and the master may be joined with the servant in an action, the purpose of which is to fasten liability on the employer for the employee's tortious conduct. [98 A. L. R. 1057.] Typical are the motor vehicle cases in which the plaintiff seeks to hold the master, owner or employer for the negligent manner in which a driver operated his vehicle. If both are sued and the driver is exonerated of negligence by the jury's verdict the owner or employer is of necessity absolved of the same charge, liability there is not based on their being joint tort-feasors but on respondeat superior. And, "The gravamen of the charge is the neg-

ligence of the employee and no recovery can be had unless it is found by the jury that the employee was negligent; therefore, when the jury found in favor of the defendant employee, and thereby that he was not negligent, it necessarily followed there could be no liability on the part of the employer.'' [Ruehling v. Pickwick-Greyhound Lines, supra; Stephens v. D. M. Oberman Mfg. Co., 334 Mo. 1078, 70 S. W. (2d) 899; Wright v. Hannan & Everitt, Inc., 336 Mo. 732, 81 S. W. (2d) 303.] The false imprisonment cases are collected in 77 A. L. R. 930 and 35 A. L. R. 652. So it is in any other tort case in which one defendant's liability rests on or is dependent upon the failure of his employee to perform his duty and it is sought to impute the negligence of the employee to the employer. If the employee is not negligent the principal is not negligent and cannot be held. [McGinnis v. Chicago, R. I. & P. Ry. Co., supra; Stith v. Newberry, supra.] The rule applies not only when the relationship of master and servant or principal and agent exists, but to the relationship of landlord and tenant under certain conditions and other relationships, whether created by contract or conduct, which exonerate one person from liability in the absence of ability to impute the negligence of another to him. [Lambert v. Jones, supra; Stith v. Newberry Co., supra; Orcutt v. Century Bldg. Co., 201 Mo. 424, 99 S. W. 1062; Schneider v. Dubinsky Realty Co., 344 Mo. 654, 127 S. W. (2d) 691; Guthrie v. Albert Wenzlick Real Estate Co. (Mo. App.), 54 S. W. (2d) 801.]

Although an agent, whether he be a manager or a mere employee, is subject to liability if he personally breaches his duty to others protected against negligent invasion (2 Restatement Law of Agency, Secs. 350, 353, 354) and although the principal, whether he be a master or an employer, may be liable for the acts of his agent (1 Restatement Law of Agency, Sec. 213; 2 Restatement Law of Agency, Sec. 470) the principle of respondeat superior as used and applied here with reference to the liability of the master is a doctrine of the substantive law of torts and not of the substantive law of agency. ''Liability exists only if all the requirements of an action of tort for negligence exist.'' [1 Restatement Law of Agency, p. 464; 3 Select Essays in Anglo-American Legal History, pp. 377-390.]

This fact is important in the disposition of this case because liability of the appellant, Kroger Grocery & Baking Company, ultimately depends on the substantive law of torts and not on the substantive law of agency or respondeat superior. If all the requisites of a tort action against the appellant are present it would be liable regardless of the liability of its manager and his exoneration by the jury. ''If the liability of the master is not predicated solely upon the negligence of the employee in whose favor a verdict has been found, but upon the negligence of another employee, or that of the employer himself, a verdict against the employer is not inconsistent. A verdict in favor of an employee does not bar recovery against the

employer where the latter has himself been guilty of acts on which, independently of acts of the employee, liability may be predicated." [35 Am. Jur., Sec. 534, p. 963; Stith v. Newberry Co., supra; Stoutimore v. Atchison, T. & S. F. Ry. Co., supra.]. In other words, if the defendants—the owner on the one hand and its manager on the other —are under different legal duties to the plaintiff which he or it breaches then liability arises irrespective of respondeat superior and regardless of the distinctions which may be made as to joint tortfeasors, malfeasance and nonfeasance and the possibility of other servants being responsible for the injury and conduct in question. [See and compare: Lindman v. Kansas City, 308 Mo. 161, 271 S. W. 516; Nimmo v. ▮▮▮ Perkinson Bros. Const. Co. (Mo.), 85 S. W. (2d) 98; Ryan v. Standard Oil Co. (Mo. App.), 144 S. W. (2d) 170; Stith v. Newberry Co., supra; Lambert v. Jones, supra, and Orcutt v. Century Bldg. Co., supra.]

▮ In this case the applicable substantive law of torts is as follows, 2 Restatement Law of Torts, Sec. 343:

"A possessor of land is subject to liability for bodily harm caused to business visitors by a natural or artificial condition thereon if, but only if, he (a) knows, or by the exercise of reasonable care could discover, the condition which, if known to him, he should realize as involving an unreasonable risk to them, and (b) has no reason to believe that they will discover the condition or realize the risk involved therein, and (c) invites or permits them to enter or remain upon the land without exercising reasonable care (I) to make the condition reasonably safe, or (II) to give a warning adequate to enable them to avoid the harm without relinquishing any of the services which they are entitled to receive, if the possessor is a public utility."

This is the duty of an owner or occupant of premises to its business invitees. The cases are collected in the following annotations: 118 A. L. R. 425; 100 A. L. R. 710; 58 A. L. R. 136; 46 A. L. R. 1111; 43 A. L. R. 866; 33 A. L. R. 181. Four of our later cases denying and sustaining liability under the rule are Ilgenfritz v. Missouri P. & L. Co., 340 Mo. 648, 101 S. W. (2d) 723; Stoll v. First National Bank, 345 Mo. 582, 134 S. W. (2d) 97; Long v. F. W. Woolworth, 159 S. W. (2d) 619, and Van Brock v. First National Bank, 349 Mo. 425, 161 S. W. (2d) 258. The appellant does not contend that the respondent did not make a case of liability on the facts but says there is no liability because the jury found the store manager not guilty. Without again quoting the pleadings and the instructions it is obvious that Kroger's liability comes within this substantive rule of tort law. It was a Kroger store. The appellant was engaged in the retail grocery business in the store in Eureka. The respondent was on business there and fell and was injured, as the jury could reasonably find, because of the hole in the floor which "the defendant

corporation and defendant Boemler" permitted when they knew of the hazard. While the proprietor of a store is not an insurer of the safety of its customers, "The duty which an owner or occupant of property is under to keep the premises in a reasonably safe condition cannot be delegated by him so as to avoid personal responsibility." [38 Am. Jur., Sec. 93, p. 752; 1 Restatement Laws of Torts, Sec. 214, pp. 471-475.]. In short the appellant, Kroger Grocery & Baking Company, irrespective of whether its manager was found to be negligent owed a duty to the respondent to maintain the store in such a manner as not to injure her by reason of a hole in the entrance of which it knew or should have known and which was unknown to her. It is not the type of tort which may be sustained solely upon a finding of negligence on the part of its manager or some other agent. Others may or may not have been negligent with respect to the condition complained of and yet liability fastens on the appellant for its wrong which does not depend on respondeat superior. Consequently, there is no inconsistency in the jury's verdict and the motion in arrest of judgment was properly overruled.

There is nothing inconsistent in our views in this respect and the rule requiring us to review a personal injury action on the same theory upon which it was tried in the court below. The respondent pleads an instance of two distinct torts causing her injury —concurrent negligence—and not an instance of single negligence dependent on respondeat superior, as is true in the automobile cases. Consequently, there is no change in the theory of the law of the case because the pleadings, the instructions and the evidence show each defendant to have been under a different and separate legal duty or obligation to the plaintiff and the liability or non-liability of each of them to her dependent on a different legal theory; Kroger because it is the owner and possessor and did or did not (as the jury might find) violate its duty as a storekeeper and Boemler because he was or was not guilty (as the jury might find) of certain acts of specific negligence with respect to the plaintiff. . [See and compare: State ex rel. Bush v. Sturgis et al., 281 Mo. 598, 221 S. W. 91, 9 A. L. R. 1315; Stoll v. First National Bank, 345 Mo. 582, 134 S. W. (2d) 97; 5 C. J. S., Sec. 1464, p. 72 and 3 Am. Jur., Secs. 253, 830 and the cases there cited.]

The appellant's assignments of error with respect to the medical testimony, the instruction on the measure of damages and the excessiveness of the verdict may all be considered together. The appellant says the trial court permitted the plaintiff's medical witnesses to give argumentative, speculative and contradictory evidence, that there was no allegation that "plaintiff's left kidney was displaced or otherwise injured" and no testimony that the displacement of her kidney was a necessary result of her fall. It contends the instruction on the measure of damages is erroneous because it

allows the jury to find and give damages for permanent injuries when there was no proof of any such injuries resulting from the accident complained of.

Quotations from portions of the petition and summarizing some of the medical evidence sufficiently answers a part of the appellant's argument. The petition says: ". . . as a direct result of the negligence . . . of all defendants concurring as aforesaid, plaintiff's back and spine and sacroiliac joints, and the bones" etc. "were severely broken," etc., "that plaintiff's abdomen and all the organs therein were severely mashed, crushed and bruised; that she suffered a severe prolapse of all her female organs and was required to undergo an operation therefor in December, 1937, in St. Louis, Missouri; that her kidney was severely bruised, contused and crushed, so that it became necessary to perform an operation upon the plaintiff for the complete removal of her right kidney in 1937 . . . that plaintiff suffered a miscarriage . . . at her home; that she suffered a severe nervous shock . . . and all of her injuries are serious and permanent." The plaintiff and her husband testified she suffered a miscarriage and at least one doctor gave it as his opinion that she had aborted. Dr. Ozias said the kidneys were in the abdominal cavity though not inside the peritoneum and that the fall she had was sufficient to damage the kidney. Both he and Dr. Berard were of the opinion the kidney could have been misplaced by the fall. He also gave it as his opinion that her prolapsed womb was caused by the fall. Dr. Berard found both kidneys infected, the ureter kinked and removed the right kidney. Dr. Gerwitz who performed a hysterectomy said: "Well, I think the fall caused the prolapse." The appellant offered no medical testimony.

There is no question but that an allegation or plea of general damages covers only such injuries as necessarily result from the wrong relied on (Parkell v. Fitzporter et al., 301 Mo. 217, 256 S. W. 239) and that special damages which are the natural but not necessary result of the wrong and injury complained of must be specifically alleged before recovery may be had for such injuries. Examples of what this has been construed to mean are a general allegation of bruises, contusions, etc., and proof of a fibrous tumor on the right hip does not include a condition likely to become cancerous and malignant (State ex rel. Grisham v. Allen, 344 Mo. 66, 124 S. W. (2d) 1080), and a general allegation of injury to the female organs was held to not include a miscarriage and subsequent infection (Walquist v. Kansas City Rys. Co., 292 Mo. 34, 237 S. W. 493) and neither does an allegation of serious permanent injuries include insanity and traumatic neurosis (Connor v. Kansas City Rys. Co., 298 Mo. 18, 250 S. W. 574). In this case, however, we are of the opinion the allegation that "plaintiff's abdomen and all the organs therein were severely mashed, crushed and bruised" considered with the other allegations

and the entire record was sufficient to cover the evidence as to the displacement of the kidney and in this respect is similar to Price v. Metropolitan St. Ry. Co., 220 Mo. 435, 464, 465, 119 S. W. 932. And, the doctors did say the kidney could have been displaced by the fall which was proper here. [Kimmie v. Terminal Ry., 334 Mo. 596, 66 S. W. (2d) 561; Long v. Woolworth, 159 S. W. (2d) 619.]

The appellant reviews the medical evidence in great detail and points out every inconsistent statement and fact (and, there are several) and asks us to apply Ducoulombier v. Thompson, 343 Mo. 991, 124 S. W. (2d) 1105; Weaver v. Mobile & Ohio Ry. Co., 343 Mo. 223, 120 S. W. (2d) 1105, and similar instances of a witness' evidence being so incredible, inconsistent or unbelievable as to be without probative force which, of course, we cannot do. Some of the appellant's complaints are directed to evidence which was properly a matter for argument to the jury. Furthermore some of the complaints are directed to evidence as to injuries, treatments and results which may or may not have been within the issues but to which no objection was made until the evidence was in and there was ██ no motion to strike it or withdraw it from the jury's consideration and therefore cannot be reviewed. [Brunk v. Hamilton-Brown Shoe Co., 334 Mo. 517, 66 S. W. (2d) 903; Morris v. Terminal Railroad Co., 320 Mo. 371, 8 S. W. (2d) 11.] In some instances the evidence complained of had previously been testified to without objection by other witnesses and therefore cannot be considered as prejudicial. ]Keles v. C., B. & Q. Ry. Co., 326 Mo. 236, 31 S. W. (2d) 50; Griffith v. Continental Casualty Co., 299 Mo. 426, 442, 253 S. W. 1043.] We cannot unduly lengthen this opinion by reviewing the medical evidence in detail but we have read it and re-read it and while we may not believe some of it and while, strictly speaking, some of it may have been inadmissible it was not so incredible as to be without probative force or value. As we have said, the appellant offered no medical evidence and no instructions withdrawing any particular medical evidence from the jury's consideration. The plaintiff's instruction on the measure of damages was a general one allowing such sum as would fairly and reasonably compensate her for such pain and suffering and "such distinct permanent injuries" she may have suffered by reason of the occurrence. Consequently, we cannot say, under this record, that any single or even combination of matters objected to constitute reversible error. [Sec. 973, R. S. Mo. 1939, 2 Mo. Stat. Ann., p. 1091; Cordray v. City of Brookfield, 334 Mo. 249, 65 S. W. (2d) 938; Sang v. City of St. Louis, 262 Mo. 454, 171 S. W. 347.]

The respondent's theory in the trial of the cause and now is that the fall caused the miscarriage and prolapsing of the womb, the dropping of the kidney or kidneys, the kink in the ureter and following that the infection of the kidney and the subsequent operations removing the kidney and the womb, all of which follow one thing after

the other in a complete chain of causation and effect. We do not and cannot weigh the evidence as to this at least under this record. This is not a case in which we can say there was no probative evidence that respondent's condition, operations and injuries were due to the fall as was the case in Berry v. Kansas City Pub. Serv. Co., 341 Mo. 658, 108 S. W. (2d) 98, and Cox v. Missouri-Kansas-Texas Ry. Co., 335 Mo. 1226, 76 S. W. (2d) 411. If the jury believed it and found as a fact that her injuries so resulted they were of course permanent and she was entitled to be compensated accordingly and the appellant was not surprised as to the extent and seriousness of her claimed injuries in such a manner that it was unable to prepare its defense accordingly. [68 A. L. R. 490.] And it necessarily follows if the operations were necessitated by and resulted from the fall and its consequent injuries the jury was properly permitted to allow her damages for such permanent injuries as she may have sustained and their allowance in this respect was not excessive.

Finally, the appellant urges that it is entitled to a new trial of this cause because of the improper closing argument of plaintiff's counsel. The statements objected to are as follows:

"You know of the great war on syphilis in this nation. Dr. Parran of the Medical Board in Washington is the one who is responsible for having a routine examination for syphilis in every hospital.

". . . and I want to say gentlemen, you don't have to be worried about bringing in a verdict against both of these defendants. Leave it to the lawyers to collect as to one or both."

"Gentlemen, I ask you gentlemen to bring this woman in a verdict, not only because she is entitled to damages for her injury, but to vindicate her against the vicious slanders that have been cast upon her character."

In order to properly appreciate this argument it is necessary to set forth excerpts from the appellant's argument, which follow:

"He knows she didn't have any miscarriage. He knows that is all bushwa.

". . . I want to say that every statement in this court room that has been made to you for two days has been made to pull the wool over your eyes, a framed lawsuit from one end to the other.

"Mr. HULLVERSON: I object to that and I move that counsel be reprimanded.

"The COURT: Stay within the evidence.

"Mr. HULLVERSON: I move that counsel be reprimanded.

"The COURT: Proceed.

"Mr. ELY: And if it isn't a framed lawsuit I never saw one.

"Mr. HULLVERSON: I move the jury be instructed to disregard it.

"The COURT: Refrain from those comments. Stay within the evidence.

638

"Mr. ELY: I say the evidence shows it is a framed lawsuit.

"Mr. HULLVERSON: I again, if the court please, ask that the court reprimand counsel for making such an unwarranted statement in this case.

"The COURT: Stay within the record, please, Mr. Ely. Refrain from making that same statement.

"Mr. ELY: All right. Note my exception.

. . .

"The same man that gave her a test for syphilis and said it is given to everybody that goes to St. Mary's Hospital. And if you gentlemen have ever been in the hospital, or had any member of your family in the hospital, you know that isn't so.

. . .

"If she had a child in her belly, somebody thought she was trying to get rid of it. I don't know whether she did or not. I know nothing about that at all, but gentlemen of the jury, as personal, as delicate, as private a thing as that is, if she did try to do something like that she ought not to be walking around at liberty in this court room or any other place. A woman who will do away with her own prospective offspring doesn't deserve to be at liberty.

"Oh, yes it is a tough lawsuit. You bet it is a tough lawsuit, because we have to combat one lie after another. We have to defend against things we can have no positive knowledge about. All we can have are the facts that we can present to you from her own private papers. The contradictions and lies that she has told you in this court room, or when she told the doctor in the hospital, now, which place is she the most correct in?

. . .

". . . the solemn records of the St. Mary's Hospital . . . points to but one thing, and that is, just as I told you at the outset, that the plaintiff in this lawsuit is trying to sell the defendant in this case some old female troubles that she had.

. . .

"Please believe me when I say that all we want you to do is to do what you gentlemen know deep down in your hearts is the right thing to do; and if there be one man, two men, or three men, on this jury who, when you get behind the doors of your jury room, have so far forgotten their duty as to want to give away money to this woman that you know is a liar, then the rest of you men hold them in line, and the rest of you men bring in a verdict that you know ought to be brought in in this case; and that is why, gentlemen, I say, and I repeat now, and I think the court will permit it, since I call attention to this testimony, it is a framed lawsuit from start to finish."

Standing alone Mr. Hullverson's argument may be improper but obviously what he said with reference to syphilis and bringing in a

verdict vindicating his client of the vicious slander was in answer to and in retaliation of Mr. Ely's argument. If we are correct in our view as to the liability of the respective defendants it was probably not improper for him to ask a verdict against only one of them. But, regardless of that we could not say his argument in this case improper or erroneous in view of his adversary's argument. We do not say it was improper for Mr. Ely to make the statements he did make nor even that his argument was not a possible inference to draw from the case, at least from his vantage point. It was strong language, a forcible argument; provocative of retaliatory argument to the contrary, to say the least, and not likely to compel the sympathetic consideration of a jury not persuaded of its cogency.

It is our opinion that the appellant has failed to demonstrate prejudicial error and the judgment is affirmed. *Westhues, C.,* concurs; *Bohling C.,* dissents.

PER CURIAM:—The foregoing opinion by BARRETT, C., is adopted as the opinion of the court. All the judges concur.