George OSTRESH, Appellant,

v.

ILLINOIS TERMINAL RAILROAD COMPANY, a Corporation, Respondent.

No. 46163.

Supreme Court of Missouri,

Division No. 2.

April 14, 1958.

Rehearing Denied May 12, 1958.

**20**

Goldenhersh, Goldenhersh, Koebel & Gallagher and Samuel J. Goldenhersh, St. Louis, for appellant.

Ely & Voorhees, Robert C. Ely, Alphonso H. Voorhees, St. Louis, for respondent.

BOHLING, Commissioner.

George Ostresh sued the Illinois Terminal Railroad Company, a corporation, for $65,000 for personal injuries sustained in a fall on a stairway. He had a ten-juror verdict for $39,800. Plaintiff has appealed from the order granting defendant a new trial because of error in plaintiff's verdict directing instruction. Defendant, in addition, contends the court erred in not sustaining its motion for judgment in accordance with its motion for a directed verdict.

The basis of plaintiff's claim as submitted to the jury was that "the edge" of the angle piece, which bound the concrete at the landing involved, "where persons including plaintiff were caused to walk, was worn and slick," and was dangerous and not reasonably safe.

Plaintiff was the only witness to his fall. He lived in Illinois and had been working at the Falstaff Brewery in St. Louis, Missouri, for several years unloading and reloading beer trucks at night. He would board a streetcar or train at defendant's 12th and Delmar station to go home. On December 31, 1953, he entered defendant's station about 4:30 a.m., pushed the elevator button on the street level floor to go to the train level (estimated to be about 75 to 100 feet below the street level), to board a car. He decided to walk down after waiting a minute or two for the elevator, stating he did this "once in a while, maybe once or twice a year."

The stairway involved is an interior stairway, constructed inside a stair shaft approximately 10 feet square. Its door is next to the elevator door. It is of concrete, and has cast iron steps with treads of diamond shaped serrations, estimated to be $\frac{1}{16}$th to $\frac{1}{4}$ inch deep, extending to a rounded nosing at the edge of each step. Concrete landings or platforms are between floors and at the floor levels. Said landings are edged by a steel angle, approximately 2 inches wide, to bind the concrete. This angle piece has no serrations. Descending, one proceeds down a flight of four steps

to the landing between floors and then, making a right angle turn, down ten or eleven steps to the next floor landing. The wall is at one side of the stairs and on the inside is a railing of two round iron pipes fastened to vertical posts at each landing. The top of the top pipe is 44 inches above the back of a step and 38 inches above the front of the step, and the distance between the tops of the upper and lower pipes of the railing is 15 inches. At the train level are two doors; one for the public and, separated by a door post, a door of lesser width for employees. The stair railing extends 17 inches horizontally from the vertical post at the bottom step across the landing to the post between said doors, and the opening between the lower pipe and the landing is 25 inches vertically. The landing at the employees' entrance is an extension of about 26 inches of the landing for the public. It has a like railing for the employees, and a ramp extends from its edge to the stair shaft floor, which is 2 feet below the landing level.

Plaintiff testified in chief that when he got to the stairs it was "kind of pretty dim in there, you know, couldn't see very good"; and he placed his right hand on the handrail, and: "I went all the way down to the last platform and my thumb got stuck between the handrail and a post, and my feet slipped, and when my feet slipped I lose my balance and I went down head first." The first he remembered after his fall was telling the officers not to try to pick him up.

Plaintiff was seriously injured, sustaining fractures at the base of the neck of the right femur, and, we understand, of the right collarbone, wrist and thumb, in addition to lacerations, bruises and other injuries. He was 62 years old and weighed 180 pounds.

On cross-examination plaintiff repeated his statement on examination in chief about falling, stating he fell head first, his head hit, he "passed out," and he did not remember anything more about his fall. He testi-fied he did not look at the steps at any time that night; "I would never look at the steps, no"; "I didn't look at the steps, no, I was looking forwards"; and it was correct that he did not look down at the steps. There was no foreign substance on the steps. Plaintiff stated his claim was that there was a "worn spot" on the step. Asked whether he fell with his feet on the platform or on the steps, plaintiff answered "On the steps"; and then "Q. So you had stepped down from the platform onto how many steps before you fell? A. My feet slipped from the edge of the platform. * * * The Court: Was that your answer, Mr. Witness, that your foot slipped from the edge of the platform? A. Yes, sir." Asked which way his feet slipped, he answered: "Way over like this, how would I know?" Asked whether his feet slipped forward or to the side, he answered: "No, just slip on the edge down the first step off of the platform and it throw me over on the last steps towards the door."

Officer Leroy Scoggins, plaintiff's witness, testified that plaintiff was found in the area "strictly for employees," with his head about opposite the third or fourth step and his feet opposite the sixth or seventh step down from the last landing and not opposite the bottom of the stairs. Plaintiff was unconscious and was taken to City Hospital No. 1. The witness examined the stairway after the accident. The steps were worn where people normally traveled holding to the rail. There was a worn place at the top of the bottom flight of stairs. It was not worn through and did not extend all the way across. He recalled no place worn more than the depth of the serrations. He stated the stairway was of iron and concrete, was structurally sound, and people could use it every day and not fall down.

Edwin Ostresh, plaintiff's son, examined the stairway the afternoon of his father's injury when he went to search for plaintiff's glasses and dentures. He testified the angle iron at the edge of the landing in question "was worn and shiny" where peo-

ple walked, and "was rounded" more than the rest of it which had a much darker appearance and witness assumed was painted but it might have been rusted or discolored because it had not been walked upon.

The lighting involved here was from an electric light bulb in the ceiling of the train level inside the stair shaft. Plaintiff's witness Scoggins testified he didn't have any trouble with the lighting and had no difficulty seeing the steps; and plaintiff's son testified he had no difficulty in seeing the steel strip. Officer Coll, defendant's witness, stated a 200-watt bulb furnished the light and that the light was good.

Plaintiff testified he had two bottles of beer while working the night of his injury. Warren Pobis, working next to plaintiff, stated he saw plaintiff take one or two bottles of beer. Officer Scoggins testified he did not observe anything indicating plaintiff was intoxicated. Plaintiff offered in evidence certain hospital records and defendant read therefrom entries that plaintiff could "not give details of injury but apparently fell down the stairs last night while drunk", and other entries indicating plaintiff was intoxicated.

John Burke, defendant's witness and elevator operator at the time, testified that about 5:45 a.m. he had the elevator door open and was taking on passengers at the street level; that he saw plaintiff at the penny scale, 15 or 20 feet from the elevator; that plaintiff "staggered a little"; that he "hollered" to plaintiff that the streetcar was there; that plaintiff stayed at the scale and he took the passengers down to the train level. He returned to the street level with the elevator and when he went down to the train level about three minutes after he "hollered" to plaintiff, he heard some one groaning, looked in the stair shaft and found plaintiff on the floor of the stair shaft near a trash can. He called Officer Coll of the Metropolitan Police Force.

Officer John Coll, defendant's witness, found plaintiff on the floor of the stair shaft and called the station. Other members of the Force arrived soon after 6:00 a.m., and rushed plaintiff to the hospital. Officer Coll testified plaintiff told him he fell down the last ten steps, but did not recall plaintiff saying anything about losing his balance. He examined the steps and found them in good condition.

■ Defendant owes business invitees the duty of ordinary care to keep its premises in a reasonably safe condition. It is not required to exercise the highest degree of care or to make its premises absolutely safe. It is not an insurer of an invitee's safety. Williams v. Kansas City Term. Ry. Co., 288 Mo. 11, 231 S.W. 954, 956 [2]. "The basis of the defendant-proprietor's liability is defendant's superior knowledge of an unreasonable risk of harm of which the invitee does not or in the exercise of ordinary care should not know. Such a defendant is not liable for injuries due to dangers which are obvious, or as well known to plaintiff as to defendant." Stafford v. Fred Wolferman, Inc., Mo., 307 S. W.2d 468, 473 [1–3]; Lindquist v. S. S. Kresge Co., 345 Mo. 849, 136 S.W.2d 303, 305. It is stated in 65 C.J.S. Negligence § 50, p. 541: "The duty to keep premises safe for invitees applies only to defects or conditions which are in the nature of hidden dangers, traps, snares, pitfalls, and the like, in that they are not known to the invitee, and would not be observed by him in the exercise of ordinary care. The invitee assumes all normal, obvious, or ordinary risks attendant on the use of the premises, and the owner or occupant is under no duty to reconstruct or alter the premises so as to obviate known and obvious dangers."

■ There is no testimony in this case that any of the electric bulbs lighting the stairway were not on. Plaintiff's evidence established that there was a plain frosted electric light bulb in the ceiling immediately above the landing involved. Plaintiff did not attempt to establish its candle power. Plaintiff's witnesses, Edwin Ostresh and Scoggins, had no difficulty in seeing the steps and the angle piece. Plaintiff's

characterization of the lighting as "kind of pretty dim in there, you know, couldn't see very good" when he got to the stairs was not substantial evidence in the circumstances of record that defendant did not exercise ordinary care in lighting the stairway at the landing where plaintiff fell. Lindquist v. S. S. Kresge Co., supra; Phelps v. Stewart, Mo.App., 187 S.W.2d 69, 72.

Plaintiff, in his brief, states that the angle piece "had been 'worn down smooth and shiny and slick,'" referring to the following: "Q. Mr. Ostresh, the portion of the steel band surrounding the platform where your father was caused to fall that had not been worn down smooth and shiny and slick, what was its condition, was it squared up or rounded too? A. It was square, more so than the worn spot, the worn spot was rounded." The assumption by plaintiff's counsel in questioning plaintiff's son was not evidence that the angle piece was "slick."

Plaintiff's evidence was that the angle piece where people walked was worn and shiny. No foreign substance having a tendency to cause one to slip, such as a wet or grease spot on the landing, is involved. The worn and shiny angle piece was not a hidden or lurking danger such as existed in plaintiff's cases of Haverkost v. Sears, Roebuck and Co., Mo.App., 193 S.W.2d 357, and Long v. F. W. Woolworth Co., Mo., 159 S.W.2d 619 [3–5], cases wherein the plaintiff caught the heel pad of a lady's shoe on a metal nosing projecting 1/8 to 1/4 inch above the floor at the head of a stairway (the Haverkost case), or in a hole about the size of the heel tap of a lady's shoe in an aisle of a store (the Long case), and were caused to trip and fall.

Plaintiff stresses Corley v. Kroger Grocery & Baking Co., 355 Mo. 4, 193 S.W.2d 897, 899 [4]. Mrs. Corley recovered for a fall at the entrance to defendant's store on her first trip in bad weather when her foot slipped on a metal step which was smooth, shiny, slick and slightly damp and hidden by a film of snow. The case was here on transfer upon the dissent of a judge of the St. Louis Court of Appeals who considered plaintiff had made a submissible case and, in so holding, stated that "although worn smooth it [the step] was not slippery and dangerous to use when dry" (Mo.App., 189 S.W.2d loc. cit. 178, 181, 183).

In Stein v. Buckingham Realty Co., Mo. App., 60 S.W.2d 712, 713 [1–4], 714, plaintiff fell while walking, for the first time, down a circular marble stairway, described by plaintiff as being slippery. The court held plaintiff could not predicate a recovery on the bare fact that the stairs were slick and slippery and not safe for persons using them because of their construction out of marble, stating that circular marble stairways, although undoubtedly requiring more care in use than wooden or carpeted stairways, were not inherently dangerous; and: "Under such circumstances no jury may be permitted to denominate the mere maintenance of a marble stairway as an act of negligence upon which to base a liability for damages to one falling upon it with knowledge of its construction * * *."

In Lindquist v. S. S. Kresge Co., 345 Mo. 849, 136 S.W.2d 303, 304, the court stated that the usual hone finished marble steps are neither slick, polished, nor slippery, and that heavy traffic adjacent to the handrail had caused a step to be "cupped out" 5/8 inch by actual measurement. Plaintiff adduced testimony that the step involved was smooth, slick, uneven and was "worn about an inch at the deepest part." Testimony that the light was "dark" and "dim" was found not to establish actionable negligence in lighting the stairway; and plaintiff was held not to have made a case for the jury. The worn place in the instant case was not over 1/4 inch.

This is a case where plaintiff did not look at all. Defendant pleaded that plaintiff was contributorily negligent. Plaintiff established that the train level was "75 to 100 feet" below the street level. He fell down the last ten or eleven steps.

He testified he did not look at the steps at any time that night. He had used the stairway once or twice a year and should have known of its condition. There was nothing distracting his attention while descending the stairway. An added risk attends a stumble or fall on a stairway over one on a level surface. Defendant was not an insurer or required to furnish absolutely safe steps. Under Heidland v. Sears, Roebuck & Co., 233 Mo.App. 874, 110 S.W.2d 795, 801, plaintiff was contributorily negligent as a matter of law. See also Mullen v. Sensenbrenner Merc. Co., Mo., 260 S.W. 982, 984 [6], 33 A.L.R. 176; Stoll v. First Nat. Bk. of Independence, 345 Mo. 582, 134 S.W. 2d 97, 101 [4]; Cates v. Evans, Mo.App., 142 S.W.2d 654, 657 [3, 4].

No claim is made of any defect in the concrete portion of the landing. The width of the angle piece was estimated by plaintiff at 1¼ inches and by his son at 2 to 2½ inches. Plaintiff's explanation that his foot slipped from the edge of the platform does not establish whether his fall was occasioned by a condition of the angle piece or instead of stepping on the concrete and angle piece of the landing with his foot plaintiff inadvertently stepped upon the angle piece with his heel in such manner as to cause his foot to slip from the angle piece regardless of its condition. Plaintiff's testimony as to the cause of his fall, the only testimony on the issue, is vague and at best does not present a situation from which liability of the defendant might be drawn with a greater degree of reasonable probability than defendant's nonliability. State ex rel. Trading Post Co. v. Shain, 342 Mo. 588, 116 S.W.2d 99, 102; Zimmerman v. Young, Mo.App., 280 S.W.2d 457, 461.

We have read all the cited cases and many others. We conclude on the record made that plaintiff was not entitled to go to the jury.

The order granting a new trial is set aside and the cause is remanded with directions to sustain defendant's after trial motion for judgment in accordance with its motion for a directed verdict.

BARRETT and STOCKARD, CC., concur.

PER CURIAM.

The foregoing opinion by BOHLING, C., is adopted as the opinion of the court.

All concur.