Cornelia **WILLIAMS**, Plaintiff-Appellant,

v.

**TERMINAL RAILROAD ASSOCIATION OF ST. LOUIS, a Corporation, Defendant-Respondent.**

No. 31965.

St. Louis Court of Appeals.

Missouri.

Jan. 18, 1966.

John P. Montrey, of Guilfoil, Caruthers, Symington, Montrey & Petzall, St. Louis, for appellant.

Robert C. Ely, of Schwartz & Ely, St. Louis, for respondent.

JAMES D. CLEMENS, Special Judge.

The plaintiff sprained her ankle while walking to a train on the defendant's station platform. She sued and got a $1,500 verdict. In defendant's after-trial motion, it renewed its motion for a directed verdict. This was granted and judgment was entered for the defendant. The plaintiff appeals. So, we must decide whether plaintiff did make a submissible case on her theory that defendant had negligently failed to keep its platform in a reasonably safe condition.

The defendant's station platform was concrete but had been patched at places with an asphaltic material. Plaintiff weighed well over 200 pounds and was

wearing shoes with high "spike" heels. Describing the occurrence, she testified:

"Q And did you notice what you were walking on at the time, the composition of the substance you were walking on?

"A Well, all I can tell you, it was black to me, you know—

"Q It was black?

"A Yes, sir.

"Q And now, at the time this accident occurred would you tell us exactly what happened as far as what happened physically to you?

"A Well, we were walking along and I said to the conductor, 'How much farther do I have to walk?' I said, 'I guess we will walk almost to Shreveport,' and he laughed, and about that time I went down. I made a step and I went down, and my shoe heel got caught and I creeled over, and he happened to catch me before I hit the ground.

"Q You didn't go all the way to the ground?

"A Yes, sir, I didn't.

"Q Did your shoe come off?

"A No, it didn't.

"Q Did your ankle twist at this time?

"A Yes, sir.

"Q And were you able to remove the shoe from whatever it was stuck in by yourself?

"A No, sir. The conductor removed the shoe after I pulled it off my foot.

"Q You took your foot out of the shoe and the conductor removed it?

"A Yes, sir.

\*     \*     \*     \*     \*     \*

"Q Did you notice anything on the heel of the shoe after it was pulled out of whatever it was stuck in?

"A Yes, sir, it was something black on it, and we called it asphalt. I don't know what it was, but it was black and sticky.

"Q This was on the heel of the shoe?

"A Yes, sir.

"Q Did your heel go all the way down into whatever it was?

"A Yes, sir.

\*     \*     \*     \*     \*     \*

"Q Now, you said that you were walking down the platform and your heel caught?

"A That is right.

"Q I take it you don't know what your heel caught in, is that right?

"A No, sir, I don't know what it was fastened to.

"Q All you know, yourself, is that it got caught?

"A That is right."

Plaintiff also testified that the next time she wore the shoe, the heel broke in two. Plaintiff offered no other evidence on the issue of liability.

Defendant's evidence did not aid plaintiff. The substance of it was: When the concrete platform needed repairs, damaged areas were chipped away and filled with a black, bituminous material known as "type T asphaltic cement," similar to that used on sidewalks and streets. Considering plaintiff's weight and the size of her heel, she would have exerted a downward pressure equal to 1,400 pounds per square inch.

From this evidence the jury may well have found: that the defendant's platform at the point where plaintiff stepped was so unstable that it would not bear her weight without her heel sinking in; that she was injured as a result of that condition; that the defect was not apparent to plaintiff and she was free of negligence; and that the defendant knew the concrete

platform had been patched with the asphaltic material. But, there was no evidence whatever that the defendant had *actual knowledge* that the asphaltic material would not bear plaintiff's weight. (Contrast the case of Carsel v. Mitchell, Mo. App., 261 S.W.2d 249, 1. c. 250, where plaintiff fell through a weakened floor, and showed that the defendant owner had been told by a building contractor that the floor was dangerous and in need of repairs.) Nor was there any evidence of facts from which it can be inferred that the defendant had *constructive knowledge* of such a condition. (Contrast the case of Haverkost v. Sears, Roebuck & Co., Mo.App., 193 S.W.2d 357 [3], where the plaintiff tripped over a projecting sill, and showed that the projection was the result of gradual wear from constant use for sixteen months.)

Our courts have developed a comprehensive body of law as to the liability of an owner for injuries to an invitee. We review the principles applicable here.

■ The defendant was not an insurer. It was not required to furnish plaintiff an absolutely safe platform, but only to use ordinary care to keep it in a reasonably safe condition. Ostresh v. Illinois Terminal Railroad Co., Mo., 313 S.W.2d 19 [1, 3]. As between owner and invitee, the general rule is quoted in Hoffman v. Kroger Co., Mo.App., 340 S.W.2d 152 [2] :

> " * * * 'The owner of lands is liable in damages to those coming thereon, using due care, at his invitation or inducement, express or implied, on any business to be transacted with or permitted by him, for an injury occasioned by the unsafe condition of the premises, *which is known to him* and not to them, *and which he has suffered negligently to exist,* and of which they have received no notice.' " (Our emphasis.)

This court there added: " * * * The theory of liability in cases such as these requires that the dangerous condition must be known to the defendant and unknown to the invitee. * * * "

This element of the owner's knowledge of the dangerous condition is emphasized in the oft-quoted case of Vogt v. Wurmb, 318 Mo. 471, 300 S.W. 278 [1] : " * * * 'The true ground of liability is the proprietor's superior knowledge of the perilous instrumentality and the danger therefrom to persons going upon the property.' * * " Cases announcing and applying these principles are collected in 22 Mo.Dig., Negligence, Key No. 32(1).

These principles were applied by this court in a case similar to the one now before us, England v. Salamon, Mo.App., 324 S.W.2d 765. There, the plaintiff was crossing a walkway on crutches. Nearby was a drainage hole topped with a slab of plywood and covered with dirt. The tip of one of plaintiff's crutches sunk through this surface and he was injured. There was no evidence that defendant knew of the hole or had reason to be aware of any danger; and in reversing the judgment for plaintiff, we referred to the general rules of liability quoted above and added, at 1. c. 768 :

> " * * * Nor should he be held liable for defects which an investigation might reveal unless the situation suggests an investigation. The facts in evidence should indicate to a reasonably prudent man the likelihood of the existence of some hidden danger to persons lawfully upon the premises. One from whom ordinary care is demanded is bound to guard only against those occurrences which can reasonably be anticipated by an ordinarily prudent man. 38 Am.Jur., Negligence, Sec. 24. * * * "

■ Plaintiff plausibly argues that the patched place was in fact so unstable that her heel sunk into it, and that "she was indeed the victim of a hidden danger, if not a trap." She reasons that the defendant having repaired the cement platform with an asphaltic material, had a superior knowledge of that material. True, but all this is not enough to fix liability upon the defendant. Plaintiff had to show that de-

fendant had superior knowledge of a *dangerous condition*. There was no evidence that defendant had any actual knowledge that the asphaltic material would not adequately support a pedestrian. Nor were there any facts in evidence that defendant had constructive knowledge thereof. Therefore, the evidence did not establish defendant's liability, and the trial court properly sustained defendant's motion for a directed verdict.

The judgment in favor of the defendant is affirmed.

ANDERSON, Acting P. J., and RUDDY, J., concurs.