Michael **MELTON**, a Minor, by His Next
Friend, Mary Melton, Plaintiff-
Appellant,

v.

**ALLIED SUPERMARKETS, INC.,** a Cor-
poration, Defendant-Respondent.

No. 33579.

St. Louis Court of Appeals,
Missouri.

June 12, 1970.

Vincent M. Igoe, St. Louis, for plain-
tiff-appellant.

Evans & Dixon, Henry Menghini, St.
Louis, for defendant-respondent.

DOERNER, Commissioner.

Plaintiff, a minor, by his mother as next
friend, sued to recover for personal inju-
ries alleged to have been suffered as the
result of defendant's negligence while he
was a customer in defendant's supermar-
ket. At the close of plaintiff's evidence
the court sustained defendant's motion for
a directed verdict, and after unavailing
post-trial motions plaintiff appealed.

On March 18, 1966, plaintiff, then six
years and eight months old, together with
his sister, Cynthia, eight years of age,
were sent by their mother to defendant's
store to purchase food. Defendant's em-
ployees had stacked five cases of bottled
beer, one case on top of the other, approxi-
mately in the center of one of the aisles.
Each case contained twelve 32-ounce quart
bottles, in cardboard boxes, the bottles
being separated by dividers. The top two
cases had the tops and one side partially
removed so that some of the bottles could
be viewed and removed from the display
by shoppers. The store manager, called as
a witness by plaintiff, estimated that each
case weighed fifty pounds. No witness
testified to the dimensions of the cases, but
the white tab attached to plaintiff's Exhib-
it 1, a photograph of cases stacked as were
those at the time of the incident, indicates
that each case was 11½ inches by 15½
inches. The third dimension is not stated,
but the photograph shows that the greatest

dimension, 15½ inches, was the length of the cases and ran perpendicular to the aisle. The same source indicates that the aisle in the store was 9 feet, 7 inches wide.

As plaintiff states in his brief with commendable frankness, " * * * The record is not clear as to what caused the boy to fall against the cases. * * *" Nine years old at the time of trial, plaintiff related that he was walking down the aisle, followed by Cynthia, who was pushing a shopping cart. On direct examination he first testified that he tripped · because " * * * there's bumps in the floor and the floor ain't level, and they put something over there." However, on cross-examination plaintiff conceded that Cynthia may have hit him from behind with the cart. Cynthia stated on direct examination that the shoestring on plaintiff's left shoe was untied, and that he tripped when he stepped on it with his right foot. Taxed with her deposition, in which she had said that plaintiff tripped on something, which could have been the front of the cart she was pushing, at the trial she stated that she could not remember having so testified. She did state that she saw no bumps on the floor, and that no one else was around when plaintiff tripped and fell against the stacked cases of beer. Defendant's store manager, called as a witness by plaintiff, testified on cross-examination that the floor of the store was made of terrazzo, and that there were no bumps, lumps or dips in it. The photographs introduced by plaintiff do not show any.

Plaintiff was likewise vague as to the manner in which he was injured. In his direct examination he testified that when he tripped he hit the beer cases and one of them fell on his head. On cross-examination, however, plaintiff stated that three or four of the cases were knocked completely over when he tripped and pitched into them, so that they were lying on the floor, and when asked, "Michael, if you can think back for us and remember, was it a whole case that struck you on the head or just one of the bottles?" he answered, "I think it was just one of the bottles." He also said that he thought the bottle hit the floor first, before the glass came up and struck his head, cutting it.

Both plaintiff and Cynthia, his sister, conceded that while they were in the store they had been cautioned that it was against the rules to run in the store with the cart, and plaintiff thought that he had been running before the accident. But both testified that neither of them was running at the time it occurred. The store manager stated on direct examination that he was the father of six children, and that, in general, he knew what boys are like when they are six years old. He also testified, on cross-examination, that ceiling lights were located all the way up and down the aisle, and that there were also lights in the freezer cases adjacent to the aisle.

In their briefs both plaintiff and defendant cite a passage from an annotation in 20 ALR.2d 95, 98, which reads:

"The general rule that the owner or occupant of premises owes to an invitee thereon the duty to use ordinary care to have the premises in a reasonably safe condition for use in a manner consistent with the purposes of the invitation, has been expressly or impliedly recognized in the particular fact situation where a customer or invitee in a store is injured by the fall of displayed or piled goods or objects.

"More specifically, it has been said that merchants are under a duty to display their goods so that they will not ordinarily fall and injure a customer. The storekeeper's duty to keep his premises reasonably safe for invitees includes the duty to store its goods so that children, who may be expected on the premises, will not be injured by normal contact with displayed or stored merchandise. And where goods are stacked so that customers can help themselves from the pile, the storekeeper is required to stack them carefully, so that they will not topple if a customer using due care attempts

to take something from the top of the stack."

As noted on page 104 of that annotation, most of the cases discussed therein were decided under the res ipsa loquitur doctrine, and involved factual situations, at least under the plaintiff's evidence, in which stacked, stored or shelved merchandise under the control of the store owner, and for an unexplained reason, fell and injured the plaintiff. See, for example, Keady v. Stix, Baer & Fuller Co., Mo. App., 15 S.W.2d 379; Garfinkel v. B. Nugent & Bro. Dry Goods Co., Mo.App., 25 S.W.2d 122; Pollard v. J. J. Newberry Co., Mo.App., 228 S.W.2d 398. Relatively few cases are cited in which plaintiffs pleaded a cause of action based upon an improper stacking of merchandise or a failure to secure the same. Able counsel have not cited any analagous Missouri case, and our own research has not revealed one.

In the instant case plaintiff did not plead a cause of action under the res ipsa loquitur doctrine. What he alleged, in substance, was that the defendant's supermarket was not " * * * safe for the use of customers of said supermarket, including plaintiff in that said beer case was in danger of falling * * *." There is nothing in the record which raises even the slightest suspicion that the beer cases were stacked in such a manner that the stack was unsteady, crooked, or liable to topple upon a passing customer. Nor is there the slightest indication in the evidence that the cases were stacked in such a manner that one or more were liable to fall by reason of any *normal* contact with them by a shopper. In fact, plaintiff's own evidence, his photographs depicting the place and manner in which the cases were stacked at the time of the occurrence, shows that each was stacked in a straight columnar fashion, one directly above the other. And plaintiff testified that before he tripped and pitched into them they were not falling or moving in any way.

Nor did the plaintiff's evidence show that the stack of beer cases were in the nature of a trap, that they were concealed, or that they occupied so great a proportion of the aisle as to constitute an obstruction. According to the plaintiff's own evidence they were in plain view as he walked down the aisle towards them, there was an abundance of light, and a passageway of more than four feet on either side of the stack. In the light of plaintiff's own evidence we hold that the stack of beer cases did not create a dangerous condition, and that defendant was not negligent in placing or allowing them to remain in the position and fashion shown.

We are also of the opinion, and hold, that plaintiff's tripping and pitching forward into the stack of beer cases was the proximate cause of his injuries. Plaintiff does not contend, nor could such a contention be reasonably made, that his contact with the stack was a " * * * normal contact * * *" as that term is used in the above quotation from A.L.R.2d. According to his own evidence, plaintiff, a boy not yet seven years old, struck the stack with such force that he knocked to the floor three or four cases, each of which weighed approximately fifty pounds. As stated, plaintiff admitted that the cases were not falling or moving before he made such forcible contact with them, and the efficient and producing cause of his injuries was his own act of tripping and violently coming into contact with them. In Busch v. Great Atlantic & Pacific Tea Company, Inc., Mo.App., 416 S.W.2d 247, 251, this court quoted with approval as follows:

" * * * As was stated in Clymer v. Tennison, Mo.App., 384 S.W.2d 829, 'Prior and remote cause cannot be made basis of action if remote cause did nothing more than furnish condition or give rise to occasion by which injury was made possible and there intervened between that cause and the injury a dis-

tinct, successive, unrelated, and efficient cause of the injury, * * *.'"

In Kramer v. May Lumber Company, Mo.App., 432 S.W.2d 617, where wallboard had been stacked against a wall at such an angle as was alleged to have created a dangerous condition, the evidence was that the wallboard did not fall and injure the eight year old girl until she tried to move it. The court there held that the attempt to move the wallboard was the proximate cause of its fall. Here it was plaintiff's tripping and abnormal contact with the stack of cases that caused them to fall.

For the reasons stated the judgment is affirmed.

PER CURIAM.

The foregoing opinion by DOERNER, C., is adopted as the opinion of this court. Accordingly, judgment affirmed.

WOLFE, P. J., and BRADY and DOWD, JJ., concur.