**Robert D. GIBSON and Cindy W. Gibson, Plaintiffs-Respondents,**

v.

**CHASE METAL SERVICE, INC., Defendant-Appellant.**

**No. WD 33689.**

Missouri Court of Appeals,
Western District.

May 24, 1983.

Motion For Rehearing and/or Transfer to Supreme Court Overruled and Denied
Aug. 2, 1983.

Application to Transfer Denied
Sept. 20, 1983.

A. Warren Francis, Kansas City, for defendant-appellant.

Hollis H. Hanover, Kansas City, for plaintiffs-respondents.

Before LOWENSTEIN, P.J., and WASSERSTROM and MANFORD, JJ.

LOWENSTEIN, Presiding Judge.

The appellant, Chase Metal Service, Inc., (Chase Metal) appeals from a jury verdict for respondents Robert and Cindy Gibson awarding Robert $120,000 for personal inju-

ries sustained in a fall from his trailer truck, and awarding Cindy, his wife, $15,000 for loss of services.

Respondent Robert Gibson, a truck driver, and owner of his rig, picked up a load of aluminum sheets from Alcoa Aluminum, Alcoa, Tennessee. Part of the shipment was to be delivered to Chase Metal in North Kansas City, Missouri. Gibson, and his wife who traveled with him, arrived at Chase Metal, after closing time, the evening of July 21, 1977. They spent the night in the tractor unit which had a 40 foot flatbed trailer attached to it. On the morning of July 22, 1977, Gibson checked in with the receiving clerk at the loading dock. The clerk had him back his rig into the first truck bay on the dock. Gibson testified that while backing into the loading dock bay, he observed two to three foot high stacks of sheet metal to the right of his truck as he looked through his rear view mirror. He stated he did not pay any particular attention to the sheets of metal.

After backing into the truck bay, Gibson proceeded to remove one of two tarps covering the load on the trailer. His wife remained in the truck while this activity was taking place. The two tarps covering the load on the flatbed trailer were 20 feet by 20 feet in dimension, and were held in place by straps and ratchets located on the driver's side of the trailer. To release the straps Gibson had to move along the right side of his trailer which was located close to the sheet metal stacked in the bay area. Gibson testified that he had encountered no difficulty in walking along the right or passenger side of the trailer in order to remove the tarp straps. He again observed the stacks of sheet metal in the bay, located two to two and one half feet from the trailer.

That part of the load of aluminum which was to be delivered to Chase Metal was located on the rear portion of the trailer so only the back tarp needed to be removed. After releasing the straps, Gibson got up on top of the load and started pulling off the tarp with both hands. As he was walking backwards pulling and tugging on the tarp

he somehow fell off the trailer. Gibson testified that he did not know what caused him to fall. He was doing nothing different from usual in uncovering the load. In falling the six or seven feet from the top of the load into the truck bay, his left arm came in contact with the uncovered edge of the sheet metal stacked to the right of his trailer. He sustained a deep cut to his left forearm severing several tendons. Surgery was performed on Gibson's arm to repair the damage and reconnect the tendons. After five or six days in the hospital he and his wife flew home to Tennessee where he received other extensive treatment and procedures to repair the function of his arm and left hand.

Gibson underwent surgery in January, 1978 to shorten tendons in his arm to give him better extension of the long, ring and little fingers of his left hand. In April, 1978, Gibson's physician gave him permission to return to work.

In September, 1978, his physician performed a tendon transfer operation. Gibson was given permission to return to work at the end of November of the same year. He was seen by his physician four more times before being discharged from further care in January, 1979.

Gibson's physician testified that at the time of his medical discharge he needed no further medical treatment. It was determined, however, that Gibson had permanent disability consisting of an injury to the muscular tendons of his left forearm resulting in his inability to completely extend the ring and long fingers from his palm. This disability also affects his ability to grip if his left hand is in a "down" position, although he can hold objects in his left hand and can grip with his left hand under most circumstances. The physician testified that Gibson had achieved excellent results and he had a "good function result", and that the injury would not restrict his ability to drive a truck. Gibson's disability was rated at 11% of the left hand—he is "right handed".

During the trial, Gibson testified that he either had been unable to drive or had to

hire a driver, with whom he would travel for a total of 37 to 38 weeks from July 22, 1977 to January, 1979. Gibson also testified that he had passed an ICC exam in April, 1978 and had worked regularly since December, 1978, driving his tractor trailer between 2,000 and 3,000 miles a week throughout the United States.

Gibson's income tax records reflect that in 1976 he had incurred a loss of $2,997.00. In 1977 he had a gross income of $51,843.00 and a net of $4,523.00. In 1978 his gross was $53,315.00 and his net $9,042.00. In 1979 his gross was $63,000.00 and his net was $5,012.00. In 1980 his net was $15,-347.00.

Gibson's wife's claim (Count II), for loss of services was based on the fact they had been married only one month prior to the accident and after the accident she had to stay with him in the hospital to help care for him. She also testified that due to the accident she and her husband had to live in his parent's home for a while, and that the appearance of her husband's hand is an embarrassment to her. She did admit however, that her husband has learned to live with his injury and has adjusted well. The Gibson's suit alleged negligence on the part of Chase Metal for placing the sharp-edged stack of sheet metal so close to where drivers such as Gibson would be required to uncover their truck loads.

Chase Metal raises some six points on appeal. Its first point contends trial court error in overruling its motion to set aside the verdict and judgment on both Count I and Count II in that Gibson's fall from the trailer was the proximate cause of his injury and since there was no evidence as to the cause of his fall, the Gibsons failed to make a submissible case of negligence against Chase Metal. Chase Metal also contends the alleged dangerous condition of the premises was equally obvious to Gibson and Chase, and that Chase did not have superior knowledge of the condition nor could it reasonably foresee that injury would result from stacking the sheet metal in the loading bay. Chase Metal's five additional points will not be discussed since this first point on submissibility is dispositive of this appeal.

The judgment of the trial court is reversed.

Chase Metal states in its first point that Gibson's fall from his trailer was the proximate cause of his injury and since there was no evidence presented of negligence on the part of Chase as to the fall, the Gibsons fail to make a submissible case.

Gibson said he was in the process of pulling the tarp off of his truck when he fell. He stated that quite often the tarp would get "hung up" and suddenly release, but in the instant case he did not know what happened to cause him to fall. Gibson admitted this was a "freak accident" and he was not doing anything unusual when he fell and that he had no explanation for the fall. Gibson claims that Chase Metal Company's negligence in stacking sheet metal, with edges exposed, in the loading bay was the proximate cause of his injury. This court cannot agree. The record is silent as to any fall from any truck by any other driver at Chase Metal before or after this accident. It is clear that but for the respondent's fall from the top of the load on his own truck he would not have been injured. In Missouri, a plaintiff must prove the negligence of the defendant as the proximate cause of his injury in order to make a submissible case. Gibson's fall did not result from any negligence on the part of Chase Metal. To hold otherwise would, in effect, require a landowner to furnish an invitee on the premises a safe place to fall, which borders on strict liability and would improperly make the owner an insurer. His duty is to use ordinary care to keep the property in a reasonably safe condition, *Williams v. Terminal Railroad Association of St. Louis*, 399 S.W.2d 139, 141 (Mo.App. 1966). By Gibson failing to draw from the evidence a showing of Chase's liability for the fall he failed to make a submissible case. *Ostresh v. Illinois Terminal Railroad Company*, 313 S.W.2d 19, 24 (Mo.1958).

Gibson also failed to demonstrate that Chase Metal failed to keep its premises in a reasonably safe condition in that it permit-

ted "dangerous and sharp edged sheet metal" to be stacked in an area where persons such as the respondent would be likely to come into contact with it.

In the case of *Hokanson v. Joplin Rendering Co.,* 509 S.W.2d 107 (Mo.1974) the Supreme Court of Missouri was faced with reviewing a factually similar case in which a plaintiff employee had sustained the loss of his left hand as the result of a fall from a ladder. The plaintiff had alleged that the ladder had slipped due to grease being on the employer's floor and on the feet of the ladder. As he fell from the ladder, the plaintiff had grabbed for a beam but instead his left hand went into a valve box containing rotating machinery. There, the Supreme Court reversed the trial court judgment in favor of the plaintiff and entered judgment for the defendant.

At page 110 the Court in *Hokanson* laid out the duties owed by a possessor of a premises to an invitee as follows:

"The applicable rules governing this case appear in Restatement of the Law of Torts, Second (1965), Section 343 and 343(1).

Section 343: A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but *only if,* he

(a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and

(b) *should expect that they will not discover or realize the danger, or will fail to protect themselves against it,* and

(c) fails to exercise reasonable care to protect them against the danger.

Section 343A(1): *A possessor of land is not liable to his invitee for physical harm caused* to them *by* any activity or *condition* on the land *whose danger is known or obvious* to them, unless the possessor should anticipate the harm despite such knowledge or obviousness." (Emphasis added).

■ It is clear under the evidence presented at trial by both sides that the occurrence in the present case was so extra-

ordinary and unusual that the appellant, Chase Metal, should not have been expected to foresee or anticipate that some type of injury would result from the stack of metal which was over two feet away from the respondent's trailer and at a 90 degree angle to the aisle along the rightside of the trailer. In *Eddy v. Missouri Public Service Co.,* 309 S.W.2d 4, 9 (Mo.App.1958) this court stated:

"... [T]here is no duty imposed by law to guard against something the danger of which is not reasonably foreseeable under the circumstances, for it is equally fundamental in the law of negligence that *a person is not required to anticipate or guard against an occurrence which an ordinarily prudent and careful person could not have reasonably anticipated and would not have happened unless under exceptional circumstances* .... In the law of negligence *no duty arises from nor may be predicated on an act or omission for which there was no reason, or no reasonable ground to* anticipate that injury of any kind might result ...." (Emphasis added.)

In *Taylor v. Dale-Freeman Corporation,* 389 S.W.2d 57 (Mo.1965) at page 60 the Supreme Court stated:

"A person is not required to look for danger where he has no cause to anticipate it, or when the danger would not exist but for the negligence of another. It is not negligence to fail to anticipate that another will be negligent for one is entitled to assume and act upon the assumption that others will exercise due care for their own safety, in the absence of notice to the contrary." (Citations omitted.)

Chase Metal, could not reasonably foresee that Gibson would have an unexplained fall from the top of his trailer and come in contact with the stack of sheet metal in the loading bay. The area where the metal was stacked was a narrow aisle used only by Chase's employees to load or unload the sheets of metal delivered and stacked there. It was not an area in which Chase could reasonably anticipate nor foresee the re-

spondent's presence after falling off a trailer.

In *Thomas v. Missouri Power and Light Co.,* 562 S.W.2d 412 (Mo.App.1978), relied upon by the Gibsons, the facts are somewhat different from this case. There, due to the defendant's digging up the street in front of his house, the plaintiff could only walk in the street and apparently tripped over a rod in the street. Here, there was no reason for Gibson to be in the area. It was not foreseeable he would fall near the metal. In *Thomas* the injured person slipped on an object, here the fall was unexplained. *See Weber v. Hinds,* 440 S.W.2d 129, 135 (Mo.App.1969).

The Gibsons failed to make a submissible case even when the evidence is considered in a light most favorable to them. The trial court erred in overruling appellant's motion to set aside the verdict and judgment on both Counts I and II.

The judgment of the trial court is reversed.