Bron **SCHNEIDER** and Lori **Schneider**, Appellants,

v.

**UNION ELECTRIC COMPANY, Respondent.**

No. WD 42850.

Missouri Court of Appeals, Western District.

Jan. 15, 1991.

Motion for Rehearing and/or Transfer to Supreme Court Denied March 5, 1991.

Application to Transfer Denied April 9, 1991.

Beverly J. Figg, Jefferson City, for appellants.

James J. Virtel, Ann E. Buckley, St. Louis, for respondent.

Before KENNEDY, P.J., and SHANGLER and GAITAN, JJ.

KENNEDY, Presiding Judge.

Plaintiff Bron Schneider was injured when his foot slipped off the rung of a vertical steel ladder as he was descending the ladder connecting the roofs of two buildings of the Union Electric Callaway Plant. Schneider and his wife, Lori, sued Union Electric for damages, charging Union Electric with negligence in failing to provide a stairway instead of a ladder between the two roofs, and also in failing to provide non-slip surfaces on the rungs of the ladder. Trial resulted in a verdict of a total of $500,000 damages for husband, and a total of $5,000 for wife, with 65 percent of the fault attributable to Union Electric and 35 percent attributable to Bron Schneider.

The trial court granted Union Electric's motion for judgment n.o.v., and alternatively ordered a new trial on all issues. Plaintiffs appeal.

Plaintiff husband was an employee of Burns International Security Services, which furnished guard and security services to Union Electric's Callaway electricity generating plant under a contract with Union Electric. On May 8, 1987, during the final one-and-one-half hours of Schneider's 6 a.m. to 6 p.m. workday, his duties required him once in each half hour to check the louvers on the roof of the auxiliary building. The purpose of the check was to ascertain that the louvers were secure and that no one had tampered with them, and was necessary because the alarm system which should have protected the louvers was inoperative.

In order to inspect the louvers, Schneider had to climb down, on a vertical steel ladder affixed to the wall of the turbine building, from the turbine building roof to the roof of the auxiliary building roof where the louvers were located, then, after the inspection was made, climb back up the ladder to the turbine building roof.

When the Union Electric Callaway Plant was built, there was no plan for the ladder between the roofs of the turbine building and the auxiliary building to be used with any degree of frequency; it would be used only occasionally. The louvers located on the roof of the auxiliary building were protected by an alarm which would warn of any tampering or attempted entry. In the summer of 1984 the alarm was found not to be reliable and the practice of half-hourly visual inspections of the louvers by security personnel was instituted. These in-

spections were made every day, twice each hour around the clock. Access was from the roof of the turbine building, which was 14 feet higher than the roof of the auxiliary building, by way of a vertical ladder attached to the wall of the higher turbine building. A security guard would climb up or down the ladder four times in each hour, or 96 times a day. This practice continued from the time it was instituted in the summer of 1984 until May 1987, three days after Schneider's injury. At that time the frequency of visual inspections was reduced from once each half-hour to once each day.

On one of these half-hourly checks, Schneider was two-thirds down the ladder when his foot, or his feet, slipped from the rung of the ladder. He did not fall; he hung on with his left hand. His back struck the wall of the building, causing—as it was later discovered—severe and permanent injuries.

## I. WHETHER WORKERS' COMPENSATION COGNIZABILITY MAY BE RAISED FOR FIRST TIME ON APPEAL

■ Respondent Union Electric argues on this appeal for the first time that plaintiff Bron Schneider was a statutory employee of Union Electric, § 287.040, RSMo 1986, and that Schneider is therefore relegated to his workers' compensation remedy, § 287.120, RSMo 1986. There are a number of cases which say that a common law court does not have "subject matter jurisdiction" of a statutory employee's personal injury claim against an employer which is cognizable in a workers' compensation proceeding. See *Biller v. Big John Tree Transplanter Mfg. & Truck Sales, Inc.*, 795 S.W.2d 630, 633 (Mo.App.1990); *Wood v. Procter & Gamble Mfg. Co.*, 787 S.W.2d 816, 818 (Mo.App.1990); *McDonald v. Bi–State Dev. Agency*, 786 S.W.2d 201, 205 (Mo.App.1990); *Crofts v. Harrison*, 772 S.W.2d 901, 902–03 (Mo.App.1989); *State ex rel. McDonnell Douglas Corp. v. Ryan*, 745 S.W.2d 152, 153 (Mo. banc 1988);

*Asberry v. Bannes–Shaughnessy, Inc.*, 734 S.W.2d 250, 252 (Mo.App.1987); *Craft v. Scaman*, 715 S.W.2d 531, 535 (Mo.App. 1986); *State ex rel. Barnes Hospital v. Tillman*, 714 S.W.2d 538, 539–40 (Mo.App. 1986); *Shaver v. First Union Realty Management, Inc.*, 713 S.W.2d 297, 300 (Mo.App.1986); *Jones v. Jay Truck Driver Training Center, Inc.*, 709 S.W.2d 114, 115–16 (Mo. Banc 1986); *Reinagel v. Edwin Cooper, Inc.*, 688 S.W.2d 375, 376 (Mo. App.1985); *State ex rel. McDonnell Douglas Corp. v. Luten*, 679 S.W.2d 278, 279 (Mo. banc 1984); *Stonebarger v. Emerson Electric Co.*, 668 S.W.2d 187, 189 (Mo.App. 1984); *Zahn v. Associated Dry Goods Corp.*, 655 S.W.2d 769, 772 (Mo.App.1983); *Parmer v. Bean*, 636 S.W.2d 691, 695–96 (Mo.App.1982).

If the trial court is indeed deprived of "subject matter jurisdiction" of the Schneider claim (using the term "jurisdiction" in its strict and narrow meaning) by the appearance of facts showing that Schneider's claim belonged to the workers' compensation system, it follows that the entire proceeding resulting in the judgment in the case before us would perhaps be vitiated. The absence of "jurisdiction," in its strict sense, cannot be waived by the parties, nor can it be conferred by agreement or by acquiescence. *Bowman v. State*, 763 S.W.2d 161, 164 (Mo.App.1988); *White v. Ballou*, 755 S.W.2d 246, 248 (Mo. App.1988). The trial would have been futile, the judgment would be a nullity. We could only dismiss the appeal, and remand with directions to the trial court to dismiss the proceeding.

It has often been noted that "jurisdiction" is a term which is used imprecisely in judicial opinions and other legal writings, depending for its meaning on the context in which it is used. See *In re Marriage of Neal*, 699 S.W.2d 92, 94 (Mo.App.1985); *Lake Wauwanoka, Inc. v. Spain*, 622 S.W.2d 309, 314 (Mo.App.1981); *Restatement (Second) of Judgments* § 11 comment e (1982);[1] *see also State ex rel. Mor-*

**1.** *Restatement (Second) of Judgments* § 11 comment e makes the following observation:

The establishment of pattern is complicated by the fact that the distinction between sub-

*asch v. Kimberlin*, 654 S.W.2d 889, 893 (Mo. banc 1983) (Blackmar, J., concurring).

It does not appear to us that the term "subject matter jurisdiction" has been used in the workers' compensation defense cases in the strict and narrow sense. Until *Parmer v. Bean* in 1982, the cases had treated workers' compensation cognizability of a personal injuries claim as an affirmative defense to be pleaded and proved by the defendant. *See Greiser v. Western Supplies Co.*, 406 S.W.2d 13, 16 (Mo.1966); *Kearley v. St. Louis Car Co.*, 111 S.W.2d 976, 979–80 (Mo.App.1938); *Kemper v. Gluck*, 327 Mo. 733, 39 S.W.2d 330, 334 (1931) (en banc), *cert. denied*, 284 U.S. 649, 52 S.Ct. 29, 76 L.Ed. 551 (1931). (In *Kearley* the workers' compensation defense was attempted to be raised for the first time on appeal, as in the present case, and was held untimely.)

*Parmer v. Bean* does not determine the nature of the defense to be the want of subject matter jurisdiction as opposed to an affirmative defense; it adopts without analysis the subject matter jurisdiction terminology. The subject matter jurisdiction terminology has since *Parmer* become standard, as the above cases show, and not until the present case has a court been called upon to scrutinize the use of the term. In the earlier cases, the issue was whether the plaintiff was a statutory employee or not. In none of the cases has it made any practical difference whether workers' compensation cognizability was an affirmative defense, or whether it deprived the court of subject matter jurisdiction, for in each case (except *Kearley*) the issue was timely raised. In the case before us, however, it becomes critical to determine whether the trial court had actual subject matter jurisdiction of the plaintiffs'

claims, for if it did not, Union Electric may raise the issue even on appeal, never having raised it in the trial court. We would, in fact, be obliged sua sponte to raise and determine the question. *See Bowman v. State*, 763 S.W.2d at 164.

Squarely faced with the issue, we have determined that Union Electric, in order to claim on appeal that plaintiff Schneider was a statutory employee of Union Electric and that his claim was cognizable exclusively by workers' compensation, must have pleaded and proved the same in the trial court; and that, failing to do so, it may not introduce the issue on appeal. Implicit in this holding is our determination that the trial court did not lack *subject matter jurisdiction*, in the strict and narrow pristine sense, of the Schneiders' claims. A court has subject matter jurisdiction in a case if it has jurisdiction of the class of cases which includes the particular case. The circuit court of Cole County, a court of general and not of limited jurisdiction, Mo. Const. art. V, § 14, has jurisdiction over actions for money damages for personal injuries allegedly caused by defendant's negligence. The Schneiders' claims are of that class. "The test of [subject matter] jurisdiction is to be found in the nature of the case and the relief sought." *People ex rel. Person v. Miller*, 56 Ill. App.3d 450, 13 Ill.Dec. 920, 926, 371 N.E.2d 1012, 1018 (1977) (citations omitted).

The essential nature of the workers' compensation defense is a claim that exceptional or special circumstances, namely, plaintiff's status as a statutory employee of the defendant, have taken *this particular case* out of the court's jurisdiction of the class of cases. But lack of jurisdiction of the particular case, as opposed to lack of jurisdiction of the class of cases to which this

---

ject matter jurisdiction and merits or procedure has significance in contexts other than that concerning the vulnerability of a judgment to delayed attack. In particular, a matter may be classified as "jurisdictional" so as to permit appellate control of a lower tribunal through the devices of mandamus or prohibition where review through appeal would be ineffectual [*e.g., State ex rel. McDonnell Douglas Corp. v. Ryan*, 745 S.W.2d 152, 153 (Mo. banc 1988)]. This kind of abuse of the con-

cept of subject matter jurisdiction has practical utility. But it often results in uncritical transfer of classifications from one context, such as the availability of appellate review, to situations involving either tardily asserted grounds of appeal or attacks on judgments that have become final.

It is this "uncritical transfer of classifications" from one context to another which Union Electric seeks, and which we seek to avoid by our disposition of the issue.

case belongs, is a defect which must be timely raised or is waived. *In re Marriage of Neal,* 699 S.W.2d at 94; *People ex rel. Person v. Miller,* 13 Ill.Dec. at 926, 371 N.E.2d at 1018. In the latter case the court said:

> The real question posed by defendant concerns jurisdiction of this particular case, rather than a general jurisdiction of the subject matter. In such cases, the rule is that where the parties have adjudicated their rights before the court to a final judgment without objection to the court's right to hear the cause, the parties will be bound on appeal so far as the question of jurisdiction over the particular case is concerned.

We hold that Union Electric's claim, raised for the first time on this appeal, that the trial court did not have subject matter jurisdiction of plaintiffs' claims for damages because workers' compensation provided plaintiff Schneider's exclusive and only remedy, was waived when it was not timely raised in the trial court, and it may not be raised for the first time on appeal. In this holding we are supported by the earliest cases construing the Workmen's Compensation Act, *Kemper v. Gluck,* 327 Mo. 733, 39 S.W.2d 330 (1931) (en banc), *cert. denied,* 284 U.S. 649, 52 S.Ct. 29, 76 L.Ed. 551 (1931), and *Warren v. American Car & Foundry Co.,* 327 Mo. 755, 38 S.W.2d 718, 721 (1931) (en banc).

## II. SUBMISSIBILITY OF PLAINTIFFS' CLAIMS OF UNION ELECTRIC NEGLIGENCE

The plaintiffs' claims were submitted upon the defendant's failure to provide a stairway instead of the ladder, or disjunctively, its failure to provide non-slip surfaces on the ladder.

The trial court upon defendant's motion entered judgment for defendant notwithstanding the verdict, holding that plaintiffs' evidence showed no negligence on defendant's part which caused plaintiff Bron Schneider's injuries. Alternatively, the trial court granted a new trial to defendant on all issues on the ground that the evidence was erroneously admitted of OSHA requirements with respect to when stairways should be used, and on the ground of error "in submitting the case to the jury on the theory that Defendant could be found negligent for not providing a stairway."

■ As a security guard in the employ of Burns International Security Services to provide certain specified security services in and about Union Electric's Callaway Plant, plaintiff Bron Schneider was a business invitee of Union Electric. *Singleton v. Charlebois Constr. Co.,* 690 S.W.2d 845, 847–50 (Mo.App.1985); *Restatement (Second) of Torts* § 332(3) (1965). His status of invitee entitled him to Union Electric's ordinary care to make its premises reasonably safe for his use. *Id.* To make a case against a premises owner, a business invitee must plead and prove (1) a dangerous condition existing on defendant's premises which involves an unreasonable risk, (2) that defendant knew or by using ordinary care should have known of the condition, (3) that defendant failed to use ordinary care in removing or warning of the danger, and (4) as a result plaintiff sustained injury. *Luthy v. Denny's, Inc.,* 782 S.W.2d 661, 662–63 (Mo.App.1989).

As to Bron Schneider's status as an invitee, and as to the defendant's duty toward Schneider to use reasonable care to make the premises safe for his use, there is no disagreement between the parties. The issue between them is whether there is evidence supporting plaintiffs' thesis that Union Electric breached its duty of reasonable care toward Schneider causing his injury, with the Schneiders taking the affirmative of that issue and Union Electric the negative.

■ First, with respect to the failure to have non-skid surfaces on the rungs of the ladder:

Testifying in plaintiffs' behalf was Dr. Donald Creighton, a professional mechanical engineer. He testified that the rungs on the ladder were ¾ inch in diameter, smaller than the appropriate American National Standards Institute standard for an 18–inch–long rung, as this one was; that they had at one time been painted a battle-

ship grey, but that the paint had worn off where the climbers' feet were placed, exposing bare metal. The bare metal was slicker than the painted metal. Dr. Creighton described a number of non-slip paints and adhesive materials which were available and which could have been applied to the rungs to avoid slippage. Asked if, taking into account the regular and frequent use of the ladder, it would have been "better safety practice" to have textured or nonskid coatings on the rungs of the ladder, Dr. Creighton answered that it would.

We are unable to hold, as Union Electric would have us hold, that it was as a matter of law free from negligence in failing to furnish the rungs of the ladder with some kind of nonskid surface. Proof of the slippery condition of the surfaces of the rungs plaintiff Bron Schneider and other employees were required to climb on many times each day; Dr. Creighton's expert testimony of the availability and the desirability, from the standpoint of safety, of non-skid surfaces for the rungs of a ladder as frequently and as regularly used as this one; evidence that Union Electric had repeated reports (five in all) of falls and near falls from the ladder over a period of nearly three years, and that the slippery condition of the rungs was not of recent origin, combine to make a submissible case of negligence against Union Electric.

■ Second, with respect to the failure of Union Electric to have a stairway instead of a ladder for the use of the security guards like plaintiff:

It is not difficult to say that, as a general proposition, stairs are safer than vertical ladders. Injuries by falls on stairs are less frequent and, when they do happen, less severe. Why then are not ladders between levels outlawed in every case and stairs required instead? Stairs are more expensive and take up more room. Therefore, if passage from one level to the other is only infrequently required, the trade-off of some slight advantage on the side of safety is acceptable. And the diminution of safety would be very slight indeed. The infrequent user of the ladder could be expected to be more careful of his own safety than

one, like plaintiff, who climbs up and down the ladder several times each day, sometimes (as on the day of the injury) in a hurry. A ladder at a given location might never in its life be the scene of a fall. There have been five reported falls on this ladder during the three years of the half-hourly louver checks—one in every 8,000 round trips. At one round trip per week, it would take 160 years to make 8,000 trips and—statistically—one fall.

We have said that stairs as a general proposition are safer than ladders. No evidence of this is required; it is the common experience. The greater safety of stairways is implicit, too, in the OSHA regulation (which we hereinafter hold was properly in evidence), which called for a fixed stairway for regular travel between building levels.

We are unable to say under this evidence that Union Electric was free from fault in failing to provide a stairway for the use of plaintiff and his fellow workers who were required to go up and down the ladder frequently—40,000 round trips in the space of the preceding three years.

The cases cited by Union Electric, holding in a variety of situations that plaintiff business invitee failed to make a submissible case of negligence against defendant owner or occupier of land, are pre-comparative fault cases and are of limited value. Those cases are: *Grube v. Associated Dry Goods, Inc.*, 663 S.W.2d 310 (Mo.App.1983); *Gibson v. Chase Metal Serv., Inc.*, 655 S.W.2d 577 (Mo.App.1983); *Melton v. Allied Supermarkets, Inc.*, 456 S.W.2d 644 (Mo.App.1970); *Fowler v. Terminal R. Ass'n*, 372 S.W.2d 497 (Mo.App.1963). Under those cases it is entirely possible that Union Electric would have been held to have been free of negligence as a matter of law, for the slippery condition of the ladder and the danger inherent in the ladder (as opposed to a stairway) were as apparent to Schneider as to Union Electric. But Schneider's ignorance of the dangerous condition, and his own freedom from negligence—facts essential to be proved for submissibility under the pre-comparative fault cases cited by Union Electric—is no

longer a part of plaintiff's case against the owner or occupier of land. *Cox v. J.C. Penney Co.*, 741 S.W.2d 28, 30 (Mo. banc 1987). Instead of plaintiff's negligence excusing defendant's negligence and completely barring plaintiff's recovery, as was the case under the pre-comparative fault system, plaintiff under the comparative fault system pays for his own negligence through apportionment of fault. Courts under the comparative fault system are chary about declaring defendant's conduct non-negligent as a matter of law. More trust is reposed in the jury's assessment of the relative fault of the parties. *See Sheil v. T.G. & Y. Stores Co.*, 781 S.W.2d 778, 780 (Mo. banc 1989), and *Moss v. National Super Mkts., Inc.*, 781 S.W.2d 784, 786 (Mo. banc 1989).

Defendant Union Electric says neither its failure to provide stairs instead of a ladder, nor its failure to furnish the rungs of the ladder with nonskid surfaces, if either failure was negligent on its part, is shown to have *caused* plaintiff's injury. It says plaintiff Bron Schneider might have fallen and have sustained the same injuries by a fall on stairs, or by a fall from a ladder with nonskid surfaces on the rungs. Defendant's noncausation argument is completely answered by *Jackson v. Ray Kruse Constr. Co.*, 708 S.W.2d 664 (Mo. banc 1986). The safety measures omitted by defendant in this case could have been found by the jury to have "greatly reduced the chance of an accident." *Id.* at 668. The jury is "the arbiter of due care and reasonableness." *Id.* at 669. "Striving for certainty is a *tour de force*. The jury must deal in terms of probabilities." *Id.* at 667.

The evidence supported the submission of the nonskid surfaces hypothesis and the ladder-instead-of-stairway hypothesis. The trial court was in error in granting defendant judgment n.o.v., and in granting a new trial because of admission of the OSHA regulation (as discussed next herein) and because of erroneous submission of ladder versus stairway hypothesis.

### III. ADMISSIBILITY OF OSHA REGULATION

■ The jury had before it a certain regulation promulgated under the Occupa-

tional Safety and Health Act, 29 U.S.C. § 651 et seq. We have considered this regulation in determining plaintiffs made a submissible case under the ladder-instead-of-stairway hypothesis. The regulation, as will presently appear, tended to support plaintiffs' claim that Union Electric was negligent in failing to furnish a stairway instead of a ladder. The trial court based its alternative grant of a new trial partly upon its supposed error in the admission of the OSHA regulation.

The half-hourly checks, which necessitated descent and ascent of the ladder, had been required since the summer of 1984, almost three years at the time of plaintiff's injury. Plaintiff's theory, supported by the testimony of engineering expert Dr. Creighton, was that the ladder, although in order for occasional use, was inappropriate for the frequent use which was made of it, i.e., twice every hour, twenty-four hours a day, seven days a week, over a period of two-and-one-half years and more. There should have been a stairway for the use of the security people, like plaintiff, who made the inspections. In support of this contention, plaintiff offered and the court admitted into evidence § 1910.24 of the regulations of the Occupational Safety and Health Act ("OSHA"), which regulation reads in part as follows:

(b) *Where fixed stairs are required.*

Fixed stairs shall be provided for access from one structure level to another where operations necessitate regular travel between levels, and for access to operating platforms at any equipment which requires attentions routinely during operations. Fixed stairs shall also be provided where access to elevations is daily or at each shift for such purposes as gauging, inspection, regular maintenance, etc., where such work may expose employees to acids, caustics, gases, or other harmful substances, or for which purposes the carrying of tools or equipment by hand is normally required.

The trial court upon motion for a new trial determined that the admission of the regu-

lation was error, and granted a new trial on this ground, alternatively to the judgment n.o.v.

The admission of the OSHA regulation was correct and the trial court should not have granted a new trial because of its admission. The failure of Union Electric to comply with the OSHA regulation was not posited by plaintiff as negligence per se. If that had been plaintiff's theory, we would have to get into the question whether plaintiff, as the employee not of Union Electric but of an independent contractor, was one of a category of persons for whose benefit the regulation was intended. See as cases taking contrary positions on this question *Kraus v. Alamo Nat'l Bank*, 586 S.W.2d 202, 208 (Tex.Civ.App.1979), and *Teal v. E.I. Du Pont de Nemours & Co.*, 728 F.2d 799, 802–05 (6th Cir.1984). But plaintiff's theory is one of common law negligence, and he offers the OSHA regulation as evidence of the standard of care owed by Union Electric to the plaintiff. For this purpose it was competent evidence, which might be considered by the jury along with all other evidence bearing upon the question of Union Electric's negligence. *Kraus v. Alamo Nat'l Bank*, 586 S.W.2d at 208; *see also Donovan v. General Motors*, 762 F.2d 701, 705–06 (8th Cir. 1985); *Teal v. E.I. Du Pont de Nemours & Co.*, 728 F.2d at 801; *Melerine v. Avondale Shipyards, Inc.*, 659 F.2d 706, 713 n. 22 (5th Cir.1981); W. Prosser, *The Law of Torts* § 36 (4th ed. 1971).

## IV. INSTRUCTIONAL ERROR

Union Electric complains of plaintiffs' verdict-directing instruction that it submitted unsafe *travel between the roof levels* rather than an unsafe *ladder* or unsafe *premises*. If this was error, it could not have been prejudicial to defendant. The trial court did not grant a new trial on this ground, but respondent has a right to raise it in his brief as a ground on which the trial court should have granted a new trial but did not. *See* Supreme Court Rule 84.13(b).

The judgment is reversed and the case is remanded. The trial court is directed to reinstate the verdict of the jury and to enter judgment thereupon.

All concur.